## Tryling v. Tryling.

(Decided Oct. 21, 1932.)

ROGERS & ROGERS for appellant.

JOHN L. VEST for appellee.

Opinion of the Court by Judge Thomas—Affirming.

For the purpose of this opinion we will refer to the parties by the positions they occupied below, i.e., to the appellee as plaintiff and to the appellant as defendant. On September 20, 1911, they were ceremonially married in Hamilton County, Ohio, and thereafter lived together as husband and wife, occupying premises in different suburbs in Cincinnati, Ohio, or perhaps, sometimes within that city. The record reveals no disturbance of the smooth sailing of their matrimonial barque until somewhere near the beginning of 1922 when plaintiff discovered that defendant was dividing his attentions between her and another woman, and, quite naturally, she protested when the defendant grew grum and absented himself from the home for a short while, during which time he rented an apartment in Cincinnati from a Mrs. Wise, whom he does not produce as a witness in this case. During his temporary aloofness he divided his lodging quarters between their home and the apartment so procured by him.

In the meantime there was born to them a son, who was nine or ten years old when the above-mentioned disturbance arose. Directly after its beginning plaintiff was served with a summons issued from a court of competent jurisdiction in Hamilton county, to answer a petition filed in that court by defendant against her to obtain a divorce. She spoke to an attorney, but immediately thereafter her husband, as was his custom, appeared at their home, since he spent a part of his time there (including lodging), and she made inquiry of him concerning the action he had taken in filing the divorce suit against her and he informed her, in substance, that it would not be prosecuted by him, since, as he then intimated, he had relented from his original determination in filing it, and plaintiff then

paid no further attention to it, and so informed her attorney. After that time, it is to be gathered from the proof, the parties were more closely united than they were immediately following the breach, but at no time does it appear that defendant informed plaintiff that he would no longer live with her, or that he contemplated final and permanent separation, much less the inauguration of divorce proceedings.

After the elapse of some months plaintiff was informed of the fact that a divorce decree had been rendered, and which, of course, was proof of defendant's insincerity in stating to her that he would abandon and dismiss his divorce action. When plaintiff was made aware of the situation, she commenced to make preparations to leave their home and to take up her abode with her parents, or one of them, in Florence, Boone county, Ky., where she had formerly resided. Defendant, however, interfered to the extent, as testified to by plaintiff, of forcing her to remain and to continue their marital relationship as it theretofore had existed, accompanied by the promise that he would take such steps as were necessary to nullify the divorce decree. Of course, there is some contrariety in the testimony as to exactly what happened on that occasion, but the court found, and we think properly so, that what we have related was the substance of what occurred, and we find from the record no subsequent material disturbance until the time of defendant's unfaithful conduct in Florence, Ky., in 1928, to which place the parties removed from Hamilton county, Ohio, in 1925.

They, therefore, lived together in Hamilton county, Ohio, as husband and wife after the granting of the divorce in that state for three years or more, and thereafter until about the first of the year 1929, in Florance, Ky., or a period of about four years. About the latter date defendant ceremonially married another woman in Indiana and brought her to Florence and commenced cohabiting with her. That manifestation on his part caused plaintiff to file in the Boone circuit court this divorce action against him upon the ground of his living in adultery with another woman. Before judgment, and after the expiration of one year, she amended her petition by including the additional ground of one year's abandonment of her by defendant without her fault. In the original petition she alleged and relied on the ceremonial marriage between the two,

which, we have seen, happened on September 20, 1911. Defendant's original answer thereto was a denial of the material averments of the petition, and, in a second paragraph, he relied on the Ohio divorce decree; whereupon plaintiff filed an amended petition setting up the facts as hereinbefore recited, and, apparently taking the position that the divorce decree was a nullity because of the fraud practiced upon her by defendant in procuring it. But her counsel properly concluded that no such ground would support his collateral attack thereon, and he, therefore, averred and relied on a common-law marriage between the parties entered into by them after the Ohio divorce was granted and which was followed by sufficient cohabitation between them to satisfy the requirement for such a marriage, and that it was valid in the state of Ohio, and for which reason it would be recognized as such in this commonwealth.

The responsive pleading of defendant thereto put in issue the fact of such common-law marriage; but his learned counsel admit that a common-law marriage, when properly entered into, is valid in the state of Ohio, and that, under the rule of comity existing between the states, it would, for that reason, be recognized in this jurisdiction. The admission that common-law marriages are valid in the state of Ohio is fully supported by the opinions of the highest court of that state, one of which is Umbenhower v. Labus, 85 Ohio St. 238, 97 N. E. 832, and, that the courts of this commonwealth will recognize such marriages if valid where entered into, is supported by the cases of Stevenson v. Gray, 17 B. Mon. 193; Dannelli v. Dannelli's Adm'r, 4 Bush, 51; Potter v. Stanley, 187 Ky. 292, 219 S. W. 167; and Elkhorn Coal Corp. v. Tackett, 243 Ky. 694, 49 S. W. (2d) 571. Those admissions are agreed to by respective counsel by a stipulation filed in the case, although neither the admission nor the stipulation was necessary, since the principles of law so affirmed thereby are well and fundamentally settled. Upon submission, after a large amount of proof taken, the court sustained the Ohio common-law marriage relied on, and sustained plaintiff's ground for divorce decreeing the separation of the parties, followed by other relief prayed for in the petition including an award to plaintiff of a lump sum of $2,000 as alimony with a $100 allowance to her attorney. The attachment sued out by plaintiff at the commencement of her action was sus-

tained, and a lien was given on the property levied upon thereunder for the amount of the alimony judgment and for the costs of the action, including the allowed attorney's fee. From that judgment defendant prosecuted this appeal.

The controlling principles of law relied on by plaintiff (provided the facts bring her case within them) are not only well settled, but, as we have seen, counsel for defendant concede them to be true. But the judgment is attacked, and a reversal thereof is insisted upon, on the ground that neither plaintiff's allegations in her petition nor her proof in the cause sufficiently establishes the common-law marriage relied on by her, and which, it will be remembered, was entered into after the Ohio divorce was granted. In making that argument learned counsel for defendant strenuously insist that neither the allegation of plaintiff's pleading nor her proof shows the necessary matrimonial agreement essential to a common-law marriage. It is conceded, and which is true, that to constitute a common-law marriage there must be an agreement between the parties to marry, and for it to take effect in præsenti, followed by the requisite cohabitation as man and wife. We have no trouble in concluding from the testimony in the record that the requisite cohabitation followed the resumption of relationship between the parties after the granting of the Ohio divorce, leaving only for determination the single issue of fact of, whether that relationship was resumed with the necessary solemnity and purpose to make it a common-law marriage? But, before taking up the consideration and disposition of that issue, we will examine plaintiff's pleadings to see whether or not they are subject to the criticism made against them by defendant's counsel.

Her pleading, after reciting the facts leading up to the formation of the common-law marriage following the granting of the Ohio divorce, recited that "They (plaintiff and defendant) resumed their marital relations as husband and wife and continuously resided together as husband and wife," etc. Furthermore, it is, in substance, alleged that, after the deceit practiced on plaintiff by her husband, and because thereof, both of them determined to continue their former relationship, "and that the contract of marriage between them being valid in the state of Ohio," etc., it was likewise valid in the state of Kentucky. While

it is true that the pleading does not in express terms state that the resumption of the latter relationship, relied on as constituting their common-law marriage, was designated by them at the time as a "contract," yet the terms employed in describing such resumption can be construed to mean or intend no other conclusion than that the parties at the inception of that relationship mutually agreed thereto, and that it was to take effect in præsenti, which was done. However, later on in the pleading it will be seen the status intended by the parties to be created between them by the assumption of such relationship is referred to as "the contract of marriage." Under familiar rules we find no difficulty in concluding that the pleading was and is sufficient to allege a valid common-law marriage, and which brings us to the single issue of fact above referred to.

Learned counsel for defendant, characteristic of the frankness of counsel for both sides throughout this case, admits that there is a strong presumption in support of the validity of cohabiting relations between a man and a woman, and that it will be presumed that it was lawfully assumed, rather than meretriciously so. That admission is correct, and, as a consequence thereof, there would be no trouble whatever in concluding that the common-law marriage relied on occurred under conditions essential to its creation, were it not for the fact that defendant later contracted a ceremonial marriage in Indiana. It is strenuously insisted by defendant's counsel that, when one of the parties to an alleged common-law marriage disregards it and enters into a ceremonial marriage according to the prescribed forms of the jurisdiction where it occurred, the presumption arising from cohabitation alone is destroyed, and he cites some authorities holding that such subsequent marriage by one of the parties has that effect. But, for the purposes of this case, we may assume that the Indiana marriage by defendant had that effect, thereby rendering it necessary to determine whether the evidence in this case, independently of their continued cohabitation, was and is sufficient to support the judgment of the court in finding that the common-law marriage of plaintiff and defendant relied on in this case was validly entered into.

In approaching that question it should be remembered that the cases relied on by counsel as destroying the presumption of long cohabitation are those in which

there had been no preceding ceremonial marriage that had been in any wise interrupted and which was followed by cohabitation between the parties, since the relationship between the alleged husband and wife in the cases relied on was a common-law one from the beginning and which is mentioned at this time so as to throw light on the interpretation of plaintiff's testimony given in this case. Upon being examined she said: ''Well after we had talked it over and decided to live together as we always had, why I just stayed on.'' Other parts of her testimony are in substantiation of that statement, but expressed in no more direct or concrete language, and counsel insists that it is not sufficient to show an agreement between the parties, entered into after the Ohio divorce, to assume the marital relation. But we do not think that we should give such a technical construction to the testimony of the witness in order to defeat the validity of the long continued relationship thereafter between her and defendant, and which is justified by the universal principle of law that such relationships between persons of different sex should be upheld as valid rather than invalid when it is possible under the proof to do so.

But, in addition to such testimony, defendant, after the couple moved to Kentucky, purchased a number of parcels of real estate in Florence where they thereafter resided, and in some of them he took the deed jointly to himself and ''wife, Stella Tryling.'' He afterwards sold some of that real estate, and also some to which he took title alone, and in all of the deeds by which he conveyed them his ''wife, Stella Tryling'' was joined with him as party of the first part. Mortgages were executed by him in the same way. More convincing still,—after the Ohio divorce (and after resumption of the contested relationship which plaintiff insists constituted a common-law marriage in Ohio, and while the parties were still residing in that state), defendant procured a benefit policy upon his life in the Woodmen of the World, and made ''Stella Tryling, wife'' the beneficiary therein. Various parol statements made by him bearing on the alleged common-law marriage, to the effect that plaintiff was his wife, are proven by some of the witnesses. But no stronger proof could be adduced to establish an admission on the part of defendant that he and plaintiff were living together, not only as husband and wife, but that they were actually so, than the solemnly executed writings supra.

It will be observed that the substance of plaintiff's testimony is that the understanding and agreement between her and the defendant was that they would continue to live as they formerly had done, and which was under a valid ceremonial marriage. Therefore, the fact above referred to of the ceremonial marriage preceding the alleged common-law one, becomes a potent one in this case in interpreting and applying the testimony of plaintiff when she said that they concluded to continue to reside together as man and wife and as they had formerly done under the ceremonial marriage, and which was an undisputed valid relationship.

However, the fact of marriage, either ceremonially or pursuant to the common-law method, may be proved by convincing circumstances independently of the presumption arising from following cohabitation. Scott v. Scott, 200 Ky. 153, 252 S. W. 1019, and the Tackett and Potter Cases, supra. The action of the parties in this case in taking joint deeds to real estate to themselves and in making conveyances thereof, in all of which they are mentioned as man and wife, together with the procuring of the insurance policy by defendant on his life and specifying therein the plaintiff, "his wife," as the beneficiary, plus other circumstances in the case, are most convincing that it was the intent and purpose of both plaintiff and defendant to continue their marital relationship, when they agreed in Ohio to continue their cohabitation, as they had theretofore done under their ceremonial marriage. We, therefore, conclude that the court properly determined that there was a valid common-law marriage between the parties entered into by the necessary agreement between them to effectuate that relationship. There being no dispute about the subsequent requisite cohabitation, it necessarily results that there was such a marriage formed between the parties as contended by plaintiff, and, at the time she specifies, and it being valid in Ohio where it was entered into, it will be recognized in this jurisdiction, and the divorce was properly granted, the grounds therefor being sufficiently established.

On the cross-appeal plaintiff insists that the $100 allowance to her attorney was insufficient. The entire record, including the testimony, consists of only 177 pages, and, while counsel for defendant exhibits great industry in the preparation of the case, and, perhaps, is entitled to a larger fee, we do not think the allowance

(which is to be taxed as costs as against defendant) is subject to the objection made thereto. If it is insufficient compensation for the services rendered, counsel should look to plaintiff for the deficit.

Wherefore, the judgment is affirmed, both on the original and cross-appeals.