# Denker (Thompson's Executrix) v. Denker.

May 22, 1942.

Boyd & Boyd and S. E. Denker for appellant.

Eaton & Eaton for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

Alleging that appellee was asserting title by gift to certain promissory notes and a receiver's certificate belonging to the estate of Mary Thompson, and had refused to surrender possession thereof, the executrix of Mary Thompson's will, Elizabeth Denker, instituted this action in equity to nullify the alleged gift and compel the delivery of the property. An answer pleading a gift inter vivos of the intangibles, a reply denying the gift and pleading testatrix's incapacity to make it and appellee's confidential relation to her, and subsequent pleadings and orders, the details of which it is unnecessary to notice, evolved the indicated issue which the Chancellor, although he had overruled appellee's motion to transfer the action to Common Law, impaneled a jury to determine. At the conclusion of the evidence the Chancellor

instructed the jury, whose finding would have been merely advisory on an issue out of Chancery, to return a verdict for the appellee, and entered a judgment dismissing the petition. Since neither party questioned the propriety of the unusual procedural methods employed, we shall, without further comment, other than noting the revival of the action in the name of the successor administratrix, dispose of the case on its merits and direct the nature of the final decree.

Mrs. Thompson died on November 17, 1940, and at that time was eighty-four years of age. The alleged gift was made in the latter part of May or the first part of June preceding her death, in the presence of Mrs. Opal Denker who shortly before had been given by Mrs. Thompson the residence in Paducah in which she and Mrs. Thompson were residing. Mrs. Denker is the wife of Frank Denker, who was, apparently, a great nephew of Mrs. Thompson, and, according to her testimony on direct examination:

"A. The day she (Mrs. Thompson) gave them to him, (appellee) when he came I was in the kitchen. She called me and asked me to hand her her purse and took the notes and handed them to George and said, 'I want you to have them', and I went back to the kitchen. I can't tell you any more of it, I don't know. Sometimes every day and sometimes once a week he was there, and I wasn't always in there; sometimes I was busy and didn't happen to be there, and I can't tell you everything she said.

\* \* \* \* \* \* \* \* \*

"Q. Later do you remember an occasion when they discussed a Receiver's Certificate in the old City National Bank? A. Yes.

"Q. Tell the jury just what was said and done then. A. Well, that was at the time Mr. Hooker was planning to leave the city, he was the Receiver and he was planning to leave, and she read the notice; so when he (appellee) came she gave him this notice to see about this certificate and he took it and remarked to me, and said, 'I can't do anything with this, but I will take it to satisfy her.' He returned it a few days later; he brought it back and told her he didn't know whether she would ever get anything

out of it, and she said, 'You keep it, you might get something out of it some time. You keep it.

"Q. Who else was present at those conversations? A. Not anyone.

\* \* \* \* \* \* \* \* \*

"Q. Did she after that discuss this matter with you in any way? A. No. Well, later—I don't know if it was the same day or a day or two later— she remarked that she gave those notes to George, and I didn't make any reply or answer and they were never mentioned any more that I know of."

The notes in question were seven of a series of ten for $200 each, executed by D. E. Skinner and wife on May 29, 1937, payable at yearly intervals to the order of Mrs. Thompson and secured by a vendor's lien on real estate. The certificate in question had been issued by the City National Bank of Paducah and appears to have been of little value. Mrs. Denker admitted that Mrs. Thompson was a semi-invalid; that her mind had been seriously impaired for some two months before her death; and no testimony other than Mrs. Denker's was introduced by appellee to establish that Mrs. Thompson's mind was not impaired at the time of the alleged gift. Furthermore it was shown that for some time previously the appellee, who was Mrs. Thompson's nephew, had transacted her business, and on May 6, 1940, had been empowered by her to draw checks on her bank account. Appellee testified that the power of attorney was not executed until after the date of the alleged gift, which testimony contradicts Mrs. Denker's statement that the gift was made in the latter part of May or the first part of June. The notes were unindorsed, and, according full credence to the testimony of Mrs. Denker, it is susceptible to the construction that Mrs. Thompson did not intend to vest appellee with absolute title to the notes and receiver's certificate, but merely to place them in his custody as her agent.

For the appellant, it was shown by an apparently disinterested witness who resided in the home with Mrs. Thompson from March 26th to August 27th, 1940, that Mrs. Thompson "\* \* \* seemed addled all the time. She talked about not being at home and being out to the country to the 'old man's.' I don't know who the 'old man' was. She talked about things I don't know what

she meant. I couldn't get anything out of her conversation.''

Relative to Mrs. Thompson's condition, this witness, on cross-examination, testified as follows:

''A. I'll tell you about her: she was down sick in bed when I moved there—not able to do anything. She was up in her chair and back on the bed and continued that way, getting a little sicker in April after I moved there in March. In April she had that spell which I though was a stroke, but she got over it, I don't reckon it was.

\* \* \* \* \* \* \* \* \*

''Q. During the month of May how did she seem? A. She was gradually growing a little weaker is all I can tell you.

''Q. Did she sit up a little every day? A. Walked to the bath room sometimes.

''Q. How was she in June. A. Same old thing as long as I stayed there. She didn't seem to change.''

Mr. Skinner, the maker of the notes, testified that on June 1, 1940, he paid Mrs. Thompson the principal amount of the eighth note of the series; that she got the note out of her pocketbook but did not give it to him because he was unable to pay the accrued interest; that sixty or ninety days later he called upon Mrs. Thompson and paid the interest, whereupon she took the note out of her pocketbook and gave it to him. If Mr. Skinner's testimony is true, and its truth is not disputed by anyone, it is difficult to explain Mrs. Denker's failure to mention in her original testimony that Mrs. Thompson retained one of the notes when she made the alleged gift to appellee. Not until she had been recalled following Mr. Skinner's testimony did she attempt to qualify her reiterated statement that when handed her purse by the witness, Mrs. Thompson ''took *the notes* and handed them to George.''

Appellee's deceased mother was a sister of Mrs. Thompson, as was also Elizabeth Denker, the sole devisee and executrix of her will. Elizabeth Denker, we are informed by appellee's counsel, devised her estate to her son, Samuel E. Denker, who resides in Louisville and is

one of the attorneys representing the appellant in this litigation. The two sisters, Elizabeth Denker and appellee's mother, married the same man, and appellee and Samuel E. Denker are sons of the same father, and hence, are half-brothers as well as cousins. Mrs. Thompson's will appears to have been executed in 1935, and it may be true that she gave the notes and receiver's certificate to appellee to compensate him for his services to her and partially equalize him with her nephew, Samuel, who, she thought, would ultimately receive the estate devised his mother. On the other hand, appellee may have attempted to correct what appeared to him to be an injustice. Because surmises such as these are incapable of being resolved into conclusions when the alleged donor's lips are sealed in death and the frailties of the aged and infirm, as well as the cupidity of the alert, are unpredictable, the law looks with suspicion upon gifts unpublicized during the life of the donor, and requires of the recipient clear and convincing proof of their actuality before affixing the seal of its approval. Its minimum demand, when the donor is mentally or physically infirm and a relation of trust and confidence exists between the parties, is that the transaction be voluntary, free from undue influence, and devoid of vice rendering it inequitable or unfair. Moore's Administrator v. Edwards, 248 Ky. 517, 58 S. W. (2d) 915. See, also, Bell's Ex'r v. Lawrence et al., 272 Ky. 439, 114 S. W. (2d) 517; Hays' Adm'rs v. Patrick, 266 Ky. 713, 99 S. W. (2d) 805; Combs v. Roark's Adm'r, 221 Ky. 679, 299 S. W. 576; Anderson's Adm'r v. Darland, 192 Ky. 624, 234 S. W. 205; Hale v. Hale, 189 Ky. 171, 224 S. W. 1078.

We do not agree with appellant's counsel that because of the Negotiable Instruments Act, Kentucky Statutes, Section 3720b-1 et seq., requiring indorsement in order to transfer title, the fact that the notes were unindorsed would, as a matter of law, preclude appellee from asserting title to the notes, if they had been given to him by a competent donor for the purpose of vesting him with title. However, we regard the failure of Mrs. Thompson to indorse the notes as an evidential fact negativing appellee's claim that a gift was made or intended.

It follows from what we have said that the Chancellor erred in treating the testimony of Mrs. Denker as conclusive. Assuming that it related to an actual occur-

rence between appellee and his aged aunt, it was not sufficient to carry the burden which the law cast upon appellee to establish by convincing proof all of the essential factors of a valid gift inter vivos.

Judgment reversed with directions to enter a decree awarding appellant the relief prayed for.