Brown's Adm'r v. Brown et al.

Austin et al. v. Brown et al.

December 14, 1948.

Joe G. Davis, Henry Jackson and Montgomery & Montgomery for appellants.

Chenault Huguely and Henry G. Sandifer for appellees.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

J. Wat Brown died intestate, a resident of Boyle County, Ky., on March 18, 1945. The above consolidated

actions were filed in the Boyle Circuit Court as separate suits to determine legal questions arising from his death. The first suit listed above was filed by his duly appointed administrator against his heirs at law to settle his estate and sell his personal property for distribution amongst those entitled thereto. All his known heirs were made defendants and, in addition thereto, Iva Brown, who claimed to be the widow of decedent, was made a defendant and called on to set up any claim she may have to the personal property of decedent. The personal property involved in this suit had an appraised value of $15,687.07 exclusive of certain articles appraised at $1020 which were claimed by said Iva Brown personally as not belonging to the estate of decedent. The administrator asked for a determination of the question of whether Iva Brown was entitled to that proportion of the personal property to which she would be entitled as the surviving widow of decedent and whether she was exclusive owner of the articles of personal property appraised at $1020. Iva Brown filed her answer and counterclaim in this suit and all issues were made up by proper pleading.

The other suit listed above was a suit by one of the heirs-at-law of J. Wat Brown against the other heirs-at-law to sell three tracts of land in Boyle and Casey Counties, Ky., belonging to decedent at the time of his death, for the purpose of dividing the proceeds among his heirs-at-law in the proportion to wh'ch each was entitled. Iva Brown was made a defendant in this suit because she was claiming to have an interest therein as the surviving widow of decedent. The court was asked to adjudge that she had no interest therein. Iva Brown filed her answer and counterclaim setting up her claim to a dower interest in the property as the wife of decedent and all issues were made up by proper pleading. The case proceeded to judgment and the property was by agreement ordered sold with the question of the right of Iva Brown to participate in the distribution of the proceeds reserved for final adjudication.

We are not concerned with the above two suits except as they relate to the questions involved in this appeal and will consider them no further except to determine the rights of Iva Brown to participate in the distribution of the proceeds in each case.

## The Questions Involved

The sole questions involved in this appeal are these: (1) Was Iva Brown the wife of J. Wat Brown at the time of his death so that, as such, she was entitled to that portion of his real and personal estate provided by the laws of descent and distribution of this state? (2) Is Iva Brown the owner of the items of personal property appraised at $1020 in the estate of decedent and claimed personally by her or are they part of the estate of the deceased?

In the judgment of the lower court the first of these questions was answered in the affirmative and the second in the negative. From that judgment this appeal is prosecuted, by appellants on the first question and by appellees on cross appeal on the second question. The Chancellor filed a written opinion which, in his usual manner, carefully analyzes the evidence and makes application thereto of the legal principles involved. After a careful study of the entire record, we find that this opinion so fully reflects our views that we are adopting it as our opinion in this case. It is as follows:

"It is the claim of Iva Brown that she and J. Wat Brown, the decedent, entered into a common law marriage in Florida. It is alleged that a common law marriage is valid in that State and the proof, uncontradicted, is to that effect. One of the decisions of the supreme court of Florida on the subject referred to by the witness giving this evidence is that of Catlett v. Chestnut, 107 Fla. 498, 146 So. 241, 246, reported in 91 A. L. R. 212, which I have seen. In it, the court speaking of such marriages, said: 'Where cohabitation and repute are relied on to show such a marriage, the cohabitation must be professedly as husband and wife, and public, so that by their conduct with each other the parties may be known as husband and wife.'

"And with reference to the effect given that kind of marriage in Florida, it stated: 'Where two parties, both competent to enter into a marriage status, consummate a common-law marriage, they are just as effectually married to one another as if they had been married pursuant to a marriage license and a marriage ceremony conducted by a minister or authorized civil officer officiating in the presence of a throng of witnesses.'

"The leading decisions of the court upon the subject are set forth in the opinion.

"And I may add that this test of conduct creating the presumption of marriage is that generally applied where common law marriage is upheld. Elkhorn Coal Corp. v. Tackett, 243 Ky. 694, 49 S. W. 2d 571, 574, quoting from 18 R. C. L. p. 428, Sec. 57.

"The evidence for Iva Brown is, that she and J. Wat Brown lived together in Florida in the winter of 1942 and each of the succeeding winters until and including 1945, as husband and wife; that he introduced her to his friends and acquaintances as his wife; that they occupied the same room at the boarding house where they stayed for part of the time, as husband and wife; that they roomed together at another house for about five or six weeks as a married couple; that Brown bought property there, which he and Iva occupied as husband and wife. These so-journs in Florida lasted from several weeks to four or five months. Two of these witnesses stated that they spent about four months with the Browns in their Florida home in the winter of 1943-1944. There is no testimony to the contrary of this evidence from these witnesses as to the relationship of Brown and Iva while living in that State. Therefore, according to the uncontradicted testimony, throughout the period of their life in Florida they lived together as husband and wife, professedly, publicly, and were· so regarded by their associates and acquaintances. This was sufficient, under the Florida law as declared in the decisions of the Supreme Court of that State, to show they consummated common law marriage there.

"But the administrator and the heirs of Brown insist that inasmuch as this couple were living together in this State before their first trip to Florida, in the winter of 1942, and a common law marriage may not be consummated in Kentucky, except for certain purposes not of concern here, and since Iva does not claim they had been married ceremonially, it must follow that they were living together illicitly prior to going to Florida and their cohabitation in Florida must be regarded as but a continuation of that illicit relationship. And I think the testimony relative to this enforces the conclusion that they were during the time prior to going

to Florida living together without the sanction of marriage, for common law marriage may not be consummated here. But I do not think that because they had been cohabiting unlawfully in Kentucky, their cohabiting in Florida was likewise unlawful * * * Whether that was the case depends upon their conduct by word and act, when living in that State and the significance given that conduct by the law of Florida. It must be kept in mind that in Florida, as declared in the quotation above from the Catlett case, where a common law marriage is consummated, it is just as effectual as one celebrated under the most solemn ceremonial rites. To be sure, in determining their relationship when cohabiting in Florida, it is well enough to keep in view that they had been living together in Kentucky unmarried. Presumptively, their relationship manifested in Kentucky would, nothing else appearing, carry over into their lives together in Florida. (35 Am. Jur. p. 314, Sec. 203). As that text states, this is but a presumption, that may be rebutted by evidence showing a relationship giving rise to a common law marriage. So any presumption of illicit relationship because of their lives together in Kentucky before coming to Florida is rebutted by the evidence, uncontradicted, of their cohabitation after coming to Florida being such as plainly evincing consummation of common law marriage.

''There is testimony, also, as to their manner of life in this State after their first trip to Florida, in 1942. On this, witnesses for the heirs testified as to declaration of Brown that he and Iva were not married. With the exceptions presently given, these assertions of Brown were made out of Iva's presence. A cousin of his testified that on two different occasions Brown introduced Iva to the witnesses as 'the cook.' And Birdie Roberts, who has lived with Brown's sister, Mrs. Austin, in Liberty, Kentucky, for some years, testified to hearing Brown say to Iva, after the latter had said she and Brown were married, that he was not married to her. This conversation, this witness said, took place at the home of Mrs. Austin in Liberty, 'along about 1943.'

''On the other hand, the two next door neighbors of Brown in Boyle County testified that they lived this near him for two or three years next before his death and that throughout that period Brown and Iva lived

together as husband and wife, and were so regarded by the public. There were two deeds in evidence, one from Brown conveying land he owned in Florida, and the other from him for land of his in Casey County, Kentucky. In each Iva Brown is styled his wife and joins as grantor. The one for the Florida land is dated April 18, 1944, and that for the Casey land November 20, 1943. The certificate of acknowledgement as to the Florida land shows it was taken in Boyle County, Kentucky, while that to the other deed shows it was acknowledged in Casey County, Kentucky.

"If their manner of life together in Kentucky after their first trip to Florida in the winter of 1942, may properly be considered in reaching a determination whether they consummated common law marriage in Florida during that first visit there in 1942, then, as I appraise the testimony it preponderates in favor of their marriage. The declarations of Brown out of the presence of Iva make up in great measure the evidence the heirs offer on the matter. Counsel for Iva insist his declarations under such circumstances are incompetent. So far as I can discover, that proposition has not been directly ruled upon in this jurisdiction, though in Elkhorn Coal Corp. v. Tackett, 243 Ky. 694, 49 S. W. 2d 571, 572, the opinion observes that the competence of such a declaration is extremely doubtful. In 35 Am. Jur. p. 321, it is stated that the decisions are in conflict as to the competence of declarations of one of the parties made out of the presence of other, to the effect they were not married. But certainly if admitted, they should be received with caution. Taking them as competent here, together with his assertions testified to as having been made in Iva's presence, and weighing this testimony against that of the disinterested witnesses that Brown and Iva lived together, after their return from Florida in 1942, as man and wife, openly and avowedly, there can be, I think, but one conclusion,—that the latter evidence possesses the greater probative value. His conduct speaks louder, and more convincingly, than his words. Not only so, but the two deeds reciting them to be husband and wife bear impressive testimony in favor of that conclusion. What the court said in Tryling v. Tryling, 245 Ky. 399, 53 S. W. 2d 725, 726, 728, with reference to the persuasiveness of such a recital in sol-

emnly executed instruments, may well be inserted here: 'But no stronger proof could be adduced to establish an admission on the part of defendant that he and plaintiff were living together, not only as husband and wife, but that they were actually so, than the solemnly executed writings supra.'

"Common law marriage is not recognized in this State, except for enforcing certain provisions of our Workmen's Compensation Act (KRS 342.001 et seq.) Elkhorn Coal Corp. v. Tackett, supra; Edgewater Coal Co. v. Yates, 261 Ky. 335, 87 S. W. 2d 596; Gilbert v. Gilbert, 275 Ky. 559, 122 S. W. 2d 137. But if a common law marriage is entered upon in a State where it is valid, then if the marriage is valid there, it will be treated as valid here. Tryling v. Tryling, cited above; Hoffman v. Hoffman, 285 Ky. 55, 146 S. W. 2d 347; Damron v. Damron, 301 Ky. 636, 192 S. W. 2d 741. The status they had in Florida is the vital question in this case. If they were validly married there, nothing short of death or divorce could effect a dissolution of that relationship. The only purpose in looking at their way of living after their return to Kentucky from their 1942 visit to Florida, as well as their manner of life in this State throughout the time from their return and until his death in 1945, is to see if it corroborates the claim that they consummated marriage in Florida. Hoffman v. Hoffman, supra. The evidence establishing their marriage in Florida is so convincing that testimony directed to showing that their subsequent life in Kentucky was inconsistent with such a status having been effected in Florida, should be of a strong and compelling character before being accepted. And most assuredly, it seems to me, the declarations of Brown, in plain contradiction of his conduct, are not of that character.

"Counsel for the heirs in their brief rely upon Damron v. Damron, 301 Ky. 636, 192 S. W. 2d 741, 744. But an examination of that opinion demonstrates, I think, that it is not a precedent in their favor. There a woman claimed to be the widow of Damron by virtue of a common law marriage in Texas. The testimony showed that they went from Kentucky to El Paso, Texas, in December 1935, and occupied for three days the same hotel room, registering as husband and wife. Then they went to Arizona for several weeks, where he introduced

her as his wife. From there they returned to Kentucky. For five years after their return to this State they kept their alleged marriage concealed, but secretly from time to time slept together. Damron died in August 1941. For two months just prior to his death, they lived together openly as husband and wife. The court held that the evidence did not establish a common law marriage, pointing out that under Texas law, as announced through her courts, to constitute common law marriage three elements are requisite: (1) An agreement between the parties to become man and wife, from that time on; (2) Living together pursuant to this agreement; (3) Consistently holding themselves out to the public as being husband and wife. As to whether the claimant in the Damron case met this test, the court said: 'Here, the common-law marriage failed for the reason that from the time this couple returned to Kentucky in the early spring of 1936, until the announcement of Alice's wedding in June, 1941, they did not hold themselves out to the public generally as man and wife; indeed, they did not openly live together until December, 1940, when they occupied the same apartment.'

"In support of this conclusion, the court refers to McChesney v. Johnson, Tex. Civ. App., 79 S. W. 2d 658, 660, holding that under the law of Texas there must be consistency of the relationship shown in their daily life, where it is sought to establish by conduct the fact of marriage, and that it is not a product of a relationship which says, 'We are husband and wife today and we will be again next week, but since it suits our convenience we will deny that relation in the interim.'

"In the case at bar, the uncontradicted evidence, as has been noticed, shows that the requisites of the Florida law concerning a valid common law marriage being consummated there, were satisfied. Nor did their manner of cohabitation after the return to Kentucky discredit this status. Furthermore, it must not be overlooked that under the law of Florida regarding common law marriages, if it is once consummated, it is just as effectual as a ceremonial one, as heretofore pointed out. In the case cited previously as to this being the true significance of a common law marriage in Florida, that of Catlett v. Chestnut, the court stated 91 A. L. R. page

223: 'If the marriage status ever once comes into existence, it remains in full force thereafter until it is dissolved by law or death of one of the parties. Subsequent acts of concealment or maintenance of secrecy concerning the relationship between the parties is not sufficient to destroy the marital status after it has once been assumed in contemplation of law.'

"It is my opinion, therefore, that at the time of his death Brown and Iva were husband and wife. With regard to whether certain items of personal property belong to the estate of Brown or to Iva, they consisting of an automobile, a cow, a refrigerator and some household furniture, the only evidence we have on the subject, except as to the automobile, is that for the administrator, that these things had been the property of Brown for sometime prior to his death. Iva offered no testimony as to those items. But the burden was upon her to show Brown had given them to her. Buckel v. Smith's Adm'r, 82 S. W. 235, 26 Ky. Law Rep. 494; Denker v. Denker, 290 Ky. 735, 162 S. W. 2d 555. As to the automobile, Iva's sister testified she saw Brown sign his name on the back of the certificate transferring the car to Iva. The latter's testimony to the same matter offending Sec. 606, Subsec. 2 of the Civil Code, cannot be considered, as exceptions to it have been filed. This transfer, according to her sister, was at the hospital, on March 8, 1945, which was but nine days before his death. The County Clerk testified Iva filed this certificate with Brown's transfer of the car to her in his office. For the administrator, the evidence was that in the winter of 1945, before Brown made his last trip to Florida, Iva tried to get Brown to transfer the car to her, and he declared emphatically he would not. This was testified to by Mrs. Austin and Birdie Roberts, who stated that Iva was present. The latter made no denial. So it stands uncontradicted that two or three months before his death, Brown was unwilling to transfer the car to Iva. If Iva was present when this statement was made or when the witnesses claimed it was made, then Mrs. Austin, though one of the heirs, was a competent witness. (Sec. 606, Subsec. 2, Civil Code.) And if the transfer was made March 8th, then according to all the testimony as to Brown's condition about that time, he was extremely sick. Iva and her sister were his nurses.

Only they were with him when the transfer was signed. Her sister said his mind was all right so far as she knew. I think the circumstances of this transfer call for clearer proof than has been made that he was competent to make the transfer.

"Where a close and confidential relationship between the parties is shown, the evidence to support the gift must be of such quality as to leave no reasonable doubt about the transaction, and where the donor is mentally or physically infirm, and this relation of intimacy and confidence exists, the minimum requirement of the law is that the evidence should establish it was done freely, voluntarily, and without any vice rendering it unfair or inequitable. Combs v. Roark, 221 Ky. 679, 299 S. W. 576; Moore's Adm'r v. Edwards, 248 Ky. 517, 58 S. W. 2d 915; Denker v. Denker, 290 Ky. 735, 739, 162 S. W. 2d 555. I do not think that she has met that requirement. It is unnecessary, therefore, to consider the administrator's challenge to the validity of this signature, or whether under the conditions ex'sting the transfer of title on the back of the certificate was sufficient to complete the gift of the car.

"Counsel for Iva have filed exceptions to portions of the testimony of a number of the witnesses. These may be grouped as to competency of declaration of Brown as to not being married to Iva; as to proceedings in county court on her application to be appointed administratrix of the estate; as to statements of witnesses relative to the announcement in the Advocate-Messenger of the marriage of Brown and Iva, together with the second newspaper statement correcting it; the testimony regarding the claim of Iva to a ceremonial marriage in Lexington. I have already ruled that the declarations of Brown would be treated as competent and I think the other testimony objected to is also competent. The administrator and heirs have filed exceptions to the testimony of Iva Brown as to conversations or transactions with decedent, and also as to the evidence of William Thurmond. These exceptions are sustained. The exceptions filed by counsel for Iva as to the testimony of Mrs. Austin relative to anything Brown said or did, where Iva was not present, are sustained. Judgment will be entered in accordance with these conclusions."

In briefs filed in this court after the above opinion was written and in an effort to secure reversal thereof, appellants laid great stress on several points in the evidence not referred to in the above opinion. One of these points is that a Danville newspaper in its issue of December 29, 1941, carried an account of the marriage on November 14, 1941, of Mrs. Iva Robinson and Mr. J. Wat Brown and said that they would shortly leave for Florida to spend the winter. In the issue of the following day, December 30, 1941, there was published a correction in which it was stated that the previous day's account of the wedding was incorrect and that no such wedding had taken place. The testimony showed this correction was made at the demand of Mr. Brown. Another point stressed was that on December 31, 1941, J. Wat Brown deeded a farm in Lincoln County, Ky. to Banks Hudson and in the caption of this deed Mr. Brown is referred to as an unmarried man. He alone signed the deed and no wife joined therein. This deed was executed the day after the announcement of his wedding had appeared in the paper. The attorney drawing the deed asked if he were married and that, if so, his wife would be a necessary party to the deed. Mr. Brown denied then that he was married and said the item in the paper was a mistake. We do not think this testimony is of great importance in its bearing on the common law marriage which resulted from their living together in Florida between January 1942 and February 1945. It will be noted that the newspaper announcement and the sale of the farm to Hudson both occurred in December 1941, which was before the time in 1942 when the common law marriage relationship began in Florida. It is this Florida common law marriage that is relied on by appellee, Iva Brown, not any ceremonial marriage in Kentucky.

Another point stressed in appellants' brief is that no person testified as to when, how or where the Browns married in Florida. Of course, there could be no such testimony since there was no claim of any ceremonial marriage in Florida. A common law marriage seldom, if ever, begins with an overt act as does a ceremonial marriage. It is a gradual thing and results from an intention formed and a cohabitation begun by mutual agreement and is evidenced by a continuation of that

relationship and the holding out of themselves to the public as husband and wife. We think there was overwhelming and uncontradicted proof of the existence of this relationship during the time these parties spent in Florida.

### Conclusion

After a careful consideration of the whole case, we are of the opinion that appellee, Iva Brown, established that she was the common law wife of J. Wat Brown at the time of his death and, as such, entitled to receive from his estate that portion which the statutes of descent and distribution of this state allot to the widow of a decedent. We are also of the opinion that she failed to establish the individual ownership to the items of personal property appraised with decedent's estate and claimed by her. Wherefore the judgment of the lower court is affirmed both on appeal and on cross appeal.

Judgment affirmed.