72 So.2d 57 (1954)
In re COLSON'S ESTATE.
Supreme Court of Florida. Special Division A.
April 20, 1954.
Oxford & Oxford, Lakeland, for appellant.
Carver & Langston, Lakeland, for appellee.
MATHEWS, Justice.
This appeal involves an alleged common-law marriage. The estate of Jesse Colson was being administered by Juanita Mallard when Viola Colson filed proceedings with the County Judge, alleging that she was a common-law wife of Jesse Colson, deceased, and praying for the revocation of letters of administration previously issued to Juanita Mallard, and for her appointment as administratrix. After hearing testimony, the County Judge found that Viola Colson was the common-law wife of Jesse Colson, revoked the letters previously granted and appointed Viola Colson as administratrix.
On appeal, the Circuit Judge wrote an opinion embraced in his order in which he held that Viola Colson should not have been permitted to testify with regard to conversations with Jesse Colson during his lifetime and to transactions with him. He then held "considering said testimony which this Court considers improper, along with all admissible testimony in the case, it is the opinion of this Court that the testimony as a whole fails to establish by a *58 fair preponderance of the evidence that a valid and legal husband and wife relationship existed between said Jesse Colson and Viola Colson at the time of the death of said Jesse Colson."
There was sufficient evidence before the County Judge to sustain his findings and this is especially true if the testimony of Viola Colson was admissible.
The testimony of Viola Colson was admissible in this case. The record shows that the County Judge had sustained many objections to testimony of Viola Colson under the authority of the Dead Man's Statute, F.S.A. § 90.05. At the conclusion of the direct examination of Viola Colson, on cross-examination, the very first question asked Viola Colson was with reference to the relationship of Viola and Jesse Colson and how long she had held herself out as Viola Colson. The examination then went into various details concerning transactions with Jesse Colson during his lifetime. On re-direct examination, Viola Colson was asked further questions concerning her relationship with Jesse Colson over the objection of the administratrix. After argument, the County Judge overruled the objections and permitted questions concerning conversations and transactions with Jesse Colson, deceased, and even asked some questions himself.
After the cross-examination of Viola Colson by the attorney for the administratrix, and the bars were let down and the doors opened, Viola Colson went into detail about first meeting Jesse Colson and their relationship. She testified that he visited her for a considerable time "until I and him agreed to live together as man and wife". She further testified:
"Q. Tell us about your agreement with him to live together as man and wife. A. Well, he came around to the house and asked me to live with him for his wife. I told him yes and he asked when could I start living with him. I told him to come back the next week and I'd tell him all about it.
* * * * * *
"Q. Then what happened? A. Then he came back the next week and I and him started living together as man and wife.
"Q. What did he say when he came the next week after he had asked you to be his wife? A. He told me, `I come after you to live with me as my wife.' I said, `All right.' He said, `Is you ready?' and I told him, `Yeah.'
"Q. What did you do then? A. I got my things and went on around there.
"Q. By your things, what do you mean? A. My trunk and clothes.
"Q. Did you move down to Jesse's place then? A. Yes sir."
She further testified that Jesse Colson talked about marriage a lot of times and then testified: "That's all he said. And he said like we was living was just as good as any other married life; that there was no need for a license. We was already married. * * * Talking like that he said the life we was living was as good a life as if we go to buy a license. He say, `When God put you together, you is already married.'"
It doesn't make any difference whether we approve or disapprove of common-law marriages, in this State such marriages are legal. Once a common-law marriage has been established, it continues until death or divorce. Several efforts have been made in the Legislature to abolish common-law marriages and on each occasion, the Legislature has refused to enact any law abolishing such marriages. This is a legislative matter and common-law marriages can only be abolished in this State by the Legislature.
In this case the record shows there was no impediment to marriage, on the part of either party. General repute and a present intention was established to the satisfaction of the County Judge. The burden of proof was not upon Viola Colson except to establish a prima facie case. *59 Then the burden of proof shifted. He who asserts the illegality of a marriage must assume the burden of proving his assertion. Lambrose v. Topham, Fla., 55 So.2d 557.
It appears that the County Judge fully appreciated the contentions made by the parties, the effect of the evidence, and properly applied the rules of evidence. There was substantial evidence to sustain the findings and order of the County Judge, and the Circuit Judge should not, under such circumstances, pit his judgment against that of a County Judge. Le Blanc v. Yawn, 99 Fla. 328, 126 So. 789; In re Thompson's Estate, 145 Fla. 42, 199 So. 352.
Reversed, with directions to set aside the order of the Circuit Judge reversing the order of the County Judge, and for further proceedings in accordance with this opinion.
ROBERTS, C.J., TERRELL, J., and MILLEDGE, Associate Justice, concur.