CARROLL, Judge.
This is an appeal from an order of the county judge’s court in Dade County vacating appointment of a (widow) administratrix upon upholding a challenge to the existence of a common law marriage.
The appellant Alice Louise Beacher and Leo Charles Beacher were married in 1940. He purchased a home in Dade County in which they resided until the time of his death. The wife filed suit for divorce in 1949, during the pendency of which the parties continued to reside in the home. After the wife had submitted proof before a special master, and while the cause was assumed by the parties to be still pending, they effected a reconciliation and resumed cohabitation. The wife then contacted her attorney for the purpose of having the divorce proceeding terminated because of the reconciliation, but was informed the court already had entered a decree of divorce and restored her former name of Davis. However, the parties having reconciled at or about the time the decree was entered, continued to live together as man and wife for another fifteen years.
Beacher died in 1964, and the respondent was appointed administratrix on the theory that she was his widow as the result of a common law marriage. Thereafter his sister, the appellee Emily Baecher,[1] petitioned the court to vacate the appointment. As grounds she alleged entry of the divorce decree of November 17, 1949, that there was no record of a remarriage and “that to the best of her knowledge and belief no such marriage has taken place and that the said Alice Louise Beacher is not the lawful widow next of kin and heir at law of said decedent.”
Hearing thereon resulted in the order appealed from, which contained certain findings as follows:
“ * * * [T]he Court finds after due consideration that the decedent and Alice Louise Beacher were divorced by final decree of the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, dated November 17, 1949, Chancery Case No. 123270; that there was no ceremonial remarriage of the parties after said divorce and the evidence and testimony before the Court fails to sustain the existence of the common law marriage between the parties subsequent to said divorce and said decree of divorce appearing regular on its face and not having been challenged as to its validity in any respect; that the said Alice Louise Beacher is not the legal widow and heir at law of the decedent herein; that Petitioner Emily Baecher, is the surviving sister and only heir at law of the decedent; * * ”
The order then vacated the appointment of the respondent as administratrix and appointed the petitioner.
Here the appellant contends (1) that the trial court placed the burden of proof relating to common law marriage on the wrong party, and (2) that the decision was contrary to the evidence. We find merit in both contentions, and reverse.
The record reveals that the county judge proceeded on the erroneous theory that the burden of proof was on the person claiming the common law marriage rather than on the party asserting its illegality.[2] In so holding, the able county *840 judge was in error. “No rule of law is better settled than that which requires that he who asserts the illegality of a marriage must assume the burden of proving his assertion.” Le Blanc v. Yawn, 99 Fla. 328, 126 So. 789. And see Lambrose v. Topham, Fla.1952, 55 So.2d 557; In re Colson’s Estate, Fla. 1954, 72 So.2d 57, 59.
In Lambrose v. Topham, supra, the same two questions were presented. In that case, upon noting that the lower court had mistakenly failed to place the burden of proof on the party asserting illegality, the Supreme Court said: “The County Judge applied an erroneous rule of law with reference to the burden of proof * * Commenting further the court said:
“It is well established in this state that the person who asserts the illegality of a marriage must assume the burden of proof of the assertion. Le Blanc v. Yawn, 99 Fla. 328, 126 So. 789. From the language contained in the order of the County Judge it is apparent that he considered the burden of proof on the appellant to establish her marriage to the deceased.
“It is true that the appellant was required to establish a prima facie corn-mon law marriage. This was done by the uncontradicted testimony not only of the appellant but by more than a dozen witnesses living in the community. The burden then shifted to the appellees. In Hooper v. Stokes, 107 Fla. 607, 145 So. 855, 857, 146 So. 668, this Court held: ‘[Wjhere the probate judge misapprehended the legal effect of the evidence as an entirety, his findings should not be sustained merely because there is evidence that is contradicted on which the findings may be predicated.’ See also to the same effect In re Thompson’s Estate, 145 Fla. 42, 199 So. 352.”
Turning to a consideration of the second question presented, we conclude that the county judge was in error in holding that existence of the common law marriage was not established.
The respondent’s testimony disclosed that the parties had lived in the same house and occupied the same bedroom for some 23 years, 15 of which were after the divorce decree was entered. Respondent produced a number of witnesses whose testimony disclosed repute that the parties were living together as man and wife. Such testimony spanned the entire period of *841 time involved. One of those witnesses, who had resided for a-time with the Beachers in 1958-1959 and who knew of the 1949 divorce decree, testified the Beachers occupied the same bedroom, and that several times the deceased was heard to make reference to the respondent as his wife.
The evidence presented by the respondent adequately showed the elements of capacity, cohabitation and public recognition. In addition, it established the essential element of an agreement per verba de presentí.[3] While the evidence which respondent presented may have lacked positive statements as to words of agreement exchanged between the parties, it revealed that they reconciled and resumed cohabitation at or about the time of the entry of the divorce decree. In the similar case of Navarro, Inc. v. Baker, Fla.1951, 54 So.2d 59, a reunion under such circumstances, considered together with the testimony of subsequent cohabitation and repute, was held to be sufficient proof of the element of agreement, necessary in order to establish a common law marriage. In Navarro, Inc. v. Baker, supra, as in the instant case, the parties “went back together again,” upon effecting a reconciliation at or about the time of the entry of a divorce decree in a suit filed by one of them. On the authority of that case, with other elements proved, the reconciliation “at or about the time of the entry of the divorce decree” fulfilled the requirement for an agreement as an element of common law marriage. There the Supreme Court said (54 So.2d at 59):
“There was abundant evidence to show the elements of capacity, cohabitation and public recognition, but the appellants cast doubt on the establishment of any agreement per verba de presentí. When the circumstances of their reunion are considered together with the testimony of their subsequent cohabitation and repute, Le Blanc v. Yawn, 99 Fla. 328, 126 So. 789; McClish v. Rankin, 153 Fla. 324, 14 So.2d 714, we find no error in the conclusion that this component was also proved.”
A reconciliation necessarily involves or implies mutual assent to resume married life together. 1 Nelson, Divorce § 11.14 (2d ed. 1945). Here the undisputed testimony shows the parties reconciled when they thought the divorce, which had just been entered, was still pending. Under the circumstances, whether the divorce decree was actually filed just before or just after their reconciliation is not conclusive or even material. Navarro, Inc. v. Baker, supra. See, to like effect Tryling v. Tryling, 245 Ky. 399, 53 S.W.2d 725, 728.
Against this strong prima facie proof of a common law marriage, the evidence offered by petitioner to show illegality of the marriage was patently insufficient. Petitioner presented her testimony and that of' two witnesses. One was respondent’s lawyer, who was examined as to a request he had made of petitioner to sign a consent to the appointment of respondent as administratrix. From that, petitioner would have the court infer the lawyer felt respondent was not entitled to appointment as the widow. But, as pointed out on behalf of respondent, it would be as reason *842 able to assume the request was made to avoid the trouble, expense and delay which would be occasioned by a contest over the existence of the common law marriage, such as did develop.
Petitioner’s own testimony was lacking in material bearing on the question of existence of a common law marriage. It revealed that although petitioner had lived in the Miami area for some twelve or thirteen years before her brother died, she was never in his home, and was with the parties together on one occasion. Petitioner had a shop down town, where Beach-er frequently visited her. He usually did so on Sundays when he would do carpentering and odd jobs fixing up the place. The other witness presented by petitioner was a woman friend who related statements made in her presence by Beacher on an occasion in 1960 when she attended a Sunday dinner with Beacher and the petitioner at the latter’s place. She testified that Beacher complimented petitioner on the meal and said he had to do his own cooking and that his “ex” would not do anything for him; and that he' said he was divorced and not living with his wife.
Thus petitioner’s case in challenge of the common law marriage consisted of the evidence just discussed, and the additional facts that the parties were divorced in 1949 and that (as disclosed in respondent’s testimony) she made certain use of her former name. Declarations of a deceased person, as a means of showing status or intent constitute low quality evidence. Additionally, the' statement attributed to Beacher in 1960 that his “ex” would not do anything for him could have little bearing on the validity vel non of the common law marriage which, if it existed, had its inception in 1949. This is so because once a common law marriage is entered into it continues in effect until terminated by death of one of the parties or divorce. In re Colson’s Estate, Fla.1954, 72 So.2d 57, 58; In re Thompson’s Estate, 145 Fla. 42, 199 So. 352, 356; Catlett v. Chestnut, 107 Fla. 498, 146 So. 241, 247, 91 A.L.R. 212. For the same reason, a declaration by Beacher that he was divorced and not living with his wife in 1960 is of slight probative force, and is met by the testimony of respondent and other witnesses in a position to know, to the effect that the deceased continued to live with respondent in their home until the time of his death.
As the petitioner’s showing was inadequate to form a basis for holding the nonexistence of the common law marriage, the trial judge necessarily viewed the evidence submitted by respondent as being insufficient proof of the existence of such a marriage. But as the respondent supplied proof of the needed elements of a common law marriage, we conclude the trial judge misapprehended the legal effect of the evidence by giving undue legal significance to the existence and continued existence of the 1949 divorce decree, and to the fact that respondent made certain use of her former name beginning several years after the divorce decree.
In the circumstances of this case and in light of all the evidence, neither of those factors should serve to invalidate or prevent the existence of the claimed common law marriage. In 1953 the respondent changed her driver’s license to her former name of Davis, and in 1955 or later her social security card was changed to Davis. The fact that she made those and perhaps other uses of her former name beginning, according to the record, several years after the divorce decree, was more than offset by her continued use of the name Beacher on such important matters as income tax returns and in the execution of legal documents. Thus she continued the use of her married name on joint income tax returns which the parties filed as husband and wife for some six years after the divorce decree; used the name Beacher in joining with her husband in a deed conveying 'real estate as man and wife in 1954; and similarly joined with him in execution of a note and chattel mortgage under the name of Beacher in 1958. Also, she remained the *843 beneficiary of his life insurance policy.[4] The uses which the respondent made of her former name would appear entitled to less weight as a disavowal of marital relationship than continued use of Beacher in the execution of solemn legal documents listing her as Beacher’s wife, as signifying acknowledgment of the marriage. Tryling v. Tryling, supra. There was no showing that the uses respondent made of her former name were accompanied by any express denials of the common law marriage. On the contrary, when asked why she used her former name, she replied: “My name was given back when the divorce was granted, so I thought I had to use it.”
 Nor did the existence of the 1949 divorce decree operate to prevent or even hinder a common law marriage. Under the law, after such a divorce decree becomes final, either party is free to marry or remarry. And if they remarry each other it can be by official ceremony, or a common law marriage. Rather than reject the efforts of such divorced parties to remarry (by the lawful means of common law marriage) the policy of the law and of the courts is to lend assistance and protection to such married couples in extending or renewing a lawful union. See In re Wagner’s Estate, 398 Pa. 531, 159 A.2d 495, 82 A.L.R.2d 681; In re Peterson’s Estate, 148 Colo. 52, 365 P.2d 254, 256. In the latter case the Colorado Court said:
“The law has been resourceful in developing policies which give stability to the marriage state and seek to preserve it as a basic institution in our society. So important is the marital relation that the state is said to be an unnamed but vitally interested party in all actions affecting its existence. It is the policy of the law to encourage the permanency and continuity of a marriage and to look with disfavor upon its dissolution. Githens v. Githens, supra [78 Colo. 102, 239 P. 1023, 43 A.L.R. 547].
“ ‘Remarriage is sufficiently rare in human affairs to justify regarding it as sui generis.’ In re Wagner’s Estate, 1960, 398 Pa. 531, 159 A.2d 495, 497 [82 A.L.R.2d 681], Thus regarded,Justice Bolt fittingly distinguished between a common law marriage and a common law remarriage in these words:
“ ‘These doctrines are familiar enough. We are, however, not dealing with a first marriage but with a remarriage following divorce after twenty years of wedlock. In such case we think that the law’s role of mere toleration of the common law relationship should be reversed and the status of remarriage favored, even if acquired with common law informality. * * * ’ ”
 In general, in reviewing a judgment of the probate court, this court refrains from pitting its judgment as to the probative value of the evidence against that of the trial court, or from reversing its judgment because disagreeing with the conclusions of the probate court as to the weight of the evidence. But where it appears the county judge misinterpreted the legal effect of the evidence in its entirety, and therefore his finding is not in accordance with applicable principles of law, such finding will not be sustained merely because there may be conflicting evidence in the record. Mulford v. Central Farmers Trust Co., 99 Fla. 600, 126 So. 762, 764;
*844 Hamilton v. Morgan, 93 Fla. 311, 112 So. 80, 82; Newman v. Smith, 77 Fla. 633, 82 So. 236, 241; 2 Fla.Jur., Appeals § 431.
For the reasons stated, we are of the opinion that in sustaining the petition and declaring the nonexistence of a common law marriage the able county judge misapprehended the legal effect of the evidence as a whole, which disclosed that respondent proved a common law marriage prima facie and that petitioner failed to sustain her burden to show its absence or illegality.
Accordingly the order appealed from is reversed.

. The deceased spelled his name Beacher. The sister used Baecher.

. At the start of the hearing the following appeared: “Mr. Gould: Your Honor *840 ruled at our first preliminary hearing that the burden of proof would be on the Administratrix to establish the common-law marriage. I just wondered our order of precedure this morning. Should we start out with Mr. Boone’s testimony or— The Court: Well, the matter before the Court is on your petition to vacate- the order appointing the ad-ministratrix, but I think that by submitting a copy of the divorce decree which has been already admitted in evidence, you have made a prima facie case in support of your petition; therefore, the duties to go forward with the evidence would be on the person claiming to be the wife.”
At the conclusion of the hearing there appeared the following: “The Court: * * * The only way it differs from a ceremonial marriage is that there is no minister or Judge or Notary Public to ask the questions in order for the agreement to be made. The evidence in this case is wholly unconvincing that there was ever any such agreement between these parties. They simply continued to live in the house together after the divorce as they had prior to the divorce.
“The fact that some people thought they were married is not sufficient, and I think it is very significant that the alleged wife used in most of her business transactions the name that was restored in the divorce decree. The execution of the deed is some evidence that they considered themselves husband and wife, but it is entirely insufficient to carry the burden of proof that rests upon an alleged common law wife to show that there was a common law marriage.
“I will grant the petition and vacate the order appointing, and I will enter an order appointing the sister as the sole heir.”

. The testimony of the respondent in the county judge’s court included the following: “Q So it is your testimony that you reconciled with the deceased after the divorce was granted? A No. We were reconciled before then. That is why I tried to stop it. * * I take it then that you never considered the divorce valid; is that correct? A No. Q Then why did you use your former name of Davis? A Well, it was given to m.e in the divorce. Q Did you understand then that the divorce was valid, that it was a valid decree that restored your single status, restored your former name? A Yes, I understood that. Q Then it was a valid decree of divorce? A As far as we were concerned, we went on just like we had never .been divorced, Hr. Gould, and Mr. Beacher never recognized the divorce.”

. In Tryling v. Tryling, 245 Ky. 399, 53 S.W.2d 725, 728, parties who reconciled following a divorce thereafter executed certain deeds and mortgages as man and wife, and the wife appeared as beneficiary on the husband’s life insurance policy. The Kentucky court said: “But no stronger proof could be adduced to establish an admission on the part of defendant that he and plaintiff were living together, not only as husband and wife, but that they were actually so, than the solemnly executed writings supra.”