Eva **FLORES GONZALEZ**, Individually and as next friend of Rosa Gonzales, Appellants,

v.

Otila Castillon **VIUDA** de **GONZALEZ**, Appellee.

No. 17606.

Court of Civil Appeals of Texas, Dallas.

April 30, 1971.

Rehearing Denied May 21, 1971.

Harold D. Putman, Putman & Putman, San Antonio, for appellants.

R. G. Guthrie, Schattman, Mock & Guthrie, Ernest May, Fort Worth, for appellee.

BATEMAN, Justice.

In this workmen's compensation case the sole question is whether Eva Flores Gonzalez was lawfully married to Eduardo Gonzalez when he was killed in an industrial accident. If so, she and her minor daughter Rosa are entitled to the death benefits; otherwise, the benefits go to Eduardo's mother, Otila Castillon Viuda de Gonzalez. Vernon's Ann.Civ.St., Art. 8306, Sec. 8a. For convenience, the parties will sometimes be called herein by their first names. The trial court rendered summary judgment for Otila, and Eva and Rosa appeal.

To be entitled to summary judgment Otila was under the burden of showing the absence of any genuine, material fact issue and that she was entitled to judgment as a matter of law. Great American R. Ins. Co. v. San Antonio Pl. Sup. Co., 391 S.W.2d 41, 47 (Tex.Sup.1965). Viewing the evidence in the light most favorable to the appellants and resolving all doubts as to the existence of a genuine issue as to a material fact against Otila, we cannot say that she carried this burden.

■ Eva's amended controverting affidavit to the motion for summary judgment recites that beginning at a time toward the end of the year 1959 she and Eduardo, while in the State of Texas, contracted and agreed between themselves to be and live together as husband and wife, that pursuant to such agreement they did live together and cohabit in the State of Texas as husband and wife and held themselves out to the public in the State of Texas as husband and wife, all of which resulted in a valid common law marriage between them; that the child Rosa was born as the issue of said union on February 20, 1962; that there were no impediments to the consummation of such common law marriage,

and that she and Eduardo continued to live together as husband and wife from the end of 1959 until the date of his death in 1969. The facts thus stated under oath establish the essential elements of a valid common law marriage in Texas. 38 Tex.Jur.2d, Marriage, § 15, pp. 45–6.

Appellee argues that the effect of Eva's testimony by deposition is that she and Eduardo never actually agreed to consummate a common law marriage, either in Mexico or in Texas, but that they merely lived together and held themselves out as husband and wife, thus satisfying two of the essential ingredients of such a marriage but omitting the third and basic element of a contract or agreement. Appellee also argues that the validity and enforcement of such a contract must be tested by the laws of the place where made; viz., Mexico.

However, Eva's affidavit not only states that she and Eduardo made the agreement but that it was made in Texas. Thus, an issue of fact was drawn which should have been submitted to the triers of the facts, even if that statement is contrary to her deposition testimony. Gaines v. Hamman, 163 Tex. 618, 358 S.W.2d 557, 562 (1962); Tyler v. McDaniel, 386 S.W.2d 552, 562 (Tex.Civ.App., Dallas 1965, writ ref'd n. r. e.).

Moreover, our Supreme Court has held that the essential element need not be an express agreement, but may be implied and inferred from the evidence which establishes the other essential elements; i. e., the living and cohabiting together and holding themselves out to the public as man and wife. Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682, 684 (1955).

■ It is argued that the illicit nature of the relationship begun in Mexico was not legalized by their removal to Texas, but it is also said in Shelton v. Belknap, supra, at page 685:

"But a relationship begun in illegality may, in the absence of impediments and

by the consent and agreement of the parties, put on the cloak of legality."

To the same general effect see also Hill v. Smith, 181 S.W.2d 1015 (Tex.Civ.App., Dallas 1944, no writ), cited in 55 C.J.S. Marriage § 45, pp. 913–914; White v. White, 82 Cal. 427, 23 P. 276 (1890); Howard v. Kelly, 111 Miss. 285, 71 So. 391, 393 (1916); Brown's Adm'r v. Brown, 308 Ky. 796, 215 S.W.2d 971, 974–975 (1948), and Badger v. Badger, 88 N.Y. 546 (1882).

Assuming, as we must, that the agreement of Eva and Eduardo made in Mexico to live together as husband and wife did not constitute a marriage, still it was not a status of such depravity or immorality as is usually thought of when a man and woman cohabit casually without the semblance of marriage. The status occupied by the parties in Mexico was described by the testimony of a Mexican lawyer as that of "concubinage", a relationship not unlawful but one which could be terminated by either party without the other's consent and without legal action. It is an institution recognized by law in the Republic of Mexico and the term does not carry the stigma ordinarily attached to it in English speaking countries. Nevarez v. Bailon, 287 S.W.2d 521 (Tex.Civ.App., El Paso 1956, writ ref'd). These people evidently entered into this relationship in good faith. He supported her by the fruits of his labor, while she maintained a home for him, cooked his meals and bore his children, several of whom died at birth or soon thereafter. When they came to Texas, the relationship continued with evident satisfaction to both parties. Both of them were legally competent to marry; they lived together as if they were married and held themselves out to the public as husband and wife. Their agreement to do so may be proved by circumstantial evidence, such as conduct with each other and publicly and the recognition and support by them of their child. These circumstances are sufficient to raise the issue of marriage and are pertinent evidence from which a jury might reasonably infer that a contract existed which would constitute a valid Texas common law marriage. Therefore, in our opinion, the trial court erred in granting the summary judgment. The first point of error on appeal is sustained.

Points of Error Nos. 2 through 9 all complain that there was either no evidence, or insufficient evidence, to support the finding by the court that appellee was the sole surviving parent of Eduardo, and hence a beneficiary under the Act or under the laws of descent and distribution. Appellee testified in her deposition that she was a widow and the mother of Eduardo, and we find no evidence in the record to the contrary. These points are therefore overruled.

By their eighth and ninth points of error appellants claim that there was no evidence, and in any event insufficient evidence, to support a finding that appellee had paid the funeral expenses of Eduardo. We find no such evidence in the record, and therefore sustain these points.

For the reasons given, the judgment of the trial court is reversed and remanded for trial.

Reversed and remanded.