GLADYS LEBLANC, RALPH LEBLANC, ROY LEBLANC, EDDIE
JACOBS, AND ALBERT JACOBS, Minors, by J. E. TRICE,
Their Next Friend, *Appellants*, v. MARY A. YAWN,
FRANK W. LEBLANC, AND JOSEPH A. ESPALLA, JR., *Appellees*.

En Banc.

Opinion filed February 13, 1930.

Petition for rehearing denied March 26, 1930.

*Fred H. Davis* and *C. L. Waller*, for Appellants;

*Jos. A. Edmondson* and *W. B. Myers*, for Appellees.

TERRELL, C. J.—Samuel W. LeBlanc died intestate in 1925, seized and possessed of certain lands in Leon County, Florida. In April, 1926, appellants here, who were complainants below, filed their amended bill of complaint for partition of the lands so owned by said Samuel W. Le-Blanc. A demurrer to the amended bill was overruled. Answer was filed and on final hearing the amended bill of complaint was dismissed. Appeal is taken from the final decree.

Appellants, Gladys LeBlanc, Ralph LeBlanc and Roy LeBlanc are the children of Samuel LeBlanc by his putative common law wife, Mattie Jacobs LeBlanc. Appellees, Mary A. Yawn and Frank W. LeBlanc are the children of Samuel W. LeBlanc by a former marriage. Mattie Jacobs LeBlanc, originally a party to the suit, died July 23, 1927, after the final hearing but prior to the entry of the final decree in the cause.

The primary question presented here turns on the fact of whether or not Mattie Jacobs LeBlanc was the common law wife of Samuel W. LeBlanc. Appellants take the affirmative of this issue while appellees take the negative.

It is first contended that the testimony of Mattie Jacobs

LeBlanc supporting her common law marriage to Samuel W. LeBlanc was incompetent and should have been excluded under Section 2705, Rev. Gen. Stats. of Florida (Section 4372, Comp. Gen. Laws of Florida 1927).

By the common law neither party to a suit (nor any person interested in the subject matter thereof, as to his interest) was competent to testify. Section 2705, Rev. Gen. Stats. of Florida was designed to enlarge the common law rule except as to transactions of communications between the parties interested and persons deceased and others enumerated in the statute. In this case the testimony of Mattie Jacobs LeBlanc may be eliminated entirely and there will remain sufficient testimony in the record to establish a common law marriage between Samuel W. LeBlanc and the said Mattie Jacobs LeBlanc. The question of the competency of the testimony of Mattie Jacobs LeBlanc therefore becomes immaterial and may be left open.

A common law marriage or marriage *per verba de praesenti* as distinguished from a ceremonial marriage may be proven in various ways. The best evidence of such a marriage would of course be the testimony of the contracting parties or those present when they mutually agreed to take each other as man and wife, but it may be established by what is termed habit or repute. In other words, proof of general repute and cohabitation as man and wife will support a presumption of marriage when the agreement is denied and cannot be proven by the best evidence. 18 R. C. L. 428 and 429.

To cohabit as man and wife means to live together, to have the same habitation so that where one lives there will the other live also. It does not contemplate a mere sojourn, visit, or living together for a time. Proof of general repute cannot be supported by hearsay. It must be established by positive proof that it was generally un-

derstood among the neighbors and acquainances with whom the parties associate in their daily life that they are living together as man and wife and that their relations are not meretricious. Proof of clandestine or concubinage relations will rebut the presumption of marriage. Traverse v. Reinhardt, 205 U. S. 423; Klipfel v. Klipfel, 41 Col. 40, 92 Pac. R. 26, 124 U. S. R. 96 and note; 18 R. C. L. 428 and cases cited.

The record unquestionably shows that Samuel W. LeBlanc and Mattie Jacobs LeBlanc lived together as man and wife for about ten years immediately preceding the death of the former, that four children (one being now deceased) were the product of this union, that the neighbors and friends around them with whom they came in daily contact understood that they were married, that the public generally understood them to be man and wife, that although Samuel W. LeBlanc had a living wife at the time he commenced to cohabit with Mattie Jacobs LeBlanc said union was dissolved and he lived with said Mattie Jacobs LeBlanc for six or seven years thereafter, that they ran a laundry in Tallahassee where both worked and the employees understood that they were husband and wife, that they represented themselves to be such, and that they made no effort whatsoever to conceal this relation or represent themselves to be other than husband and wife. There was little or no evidence offered by the defense that could be said to positively contradict any of the foregoing facts. Under the rule as here announced we think the presumption of marriage was amply supported.

No rule of law is better settled than that which requires that he who asserts the illegality of a marriage must assume the burden of proving his assertion. Some of the courts enforce this rule even to the extent of proving a negative. Smith v. Fuller, 138 Ia. 91, 115 N. W. R. 912, 16 L. R. A. (N. S.) 98, note page 99 citing cases. Defend-

ants below while asserting the invalidity of a common law marriage on the part of Samuel W. LeBlanc and Mattie Jacobs LeBlanc did not sustain the burden of proving their assertion.

To support their contention appellees rely on Marsicano v. Marsicano, 79 Fla. 278, 84 So. R. 156. In the Marsicano case this Court held that the evidence not only failed completely to show a common law marriage but actually negatived such a conclusion. In the instant case the presumption of marriage is fully supported and no effort was made to contradict it. The weight of the evidence in the Marsicano case supported a marriage *per verba de futoro cum copula* which is not recognized in this State, while all the evidence in the instant case points to a common law marriage which we recognize. Even the evidence of Mattie Jacobs LeBlanc if competent is sufficient to establish a common law marriage. It is in effect that an agreement was made in the beginning to live together as man and wife, and that such an agreement was actually carried out by more than ten years of cohabitation as such. It is true that a ceremonial marriage was discussed between them from time to time but this fact alone is not inconsistent with the prior common law marriage of these parties nor does it overcome the presumption thereof arising from the evidence adduced. Shank v. Wilson, 33 Wash. 612, 74 Pac. R. 812; Kromer v. Friday, 10 Wash. 621, 39 Pac. R. 229, 32 L. R. A. 671; Adger v. Ackerman, 52 C. C. A. 568, 115 Fed. R. 124.

In the absence of statutory requirement a ceremony is not essential to the validity of a marriage. Having no such requirement in this State we recognize the validity of a common law marriage. Marsicano v. Marsicano, *supra*. Many states have adopted this rule while in many others common law marriages are abrogated and a ceremony is essential to the validity of the marriage status.

This is an anomaly in our law since common law or consensual marriages were not recognized in the Colonies, and were abolished in the Mother Country prior to the Revolution. They appear to have been given sanction in this country by a dictum of Chancellor Kent in Fenton v. Reed, 4 Johns (N. Y.) 52. See also Common Law Marriage by Koegel, a very comprehensive monograph covering this subject.

The final decree of the chancellor is therefore reversed.

Reversed.

WHITFIELD, STRUM, BROWN AND BUFORD, J. J., concur.

ELLIS, J., dissents.