58 So.2d 439 (1952)
CARRETTA
v.
CARRETTA.
Supreme Court of Florida, Special Division A.
April 22, 1952.
*440 Hawkins & Orfinger, Daytona Beach, for appellant.
E.W. Gautier, New Smyrna, for appellee.
MATHEWS, Justice.
This is an appeal from a final decree of divorce. There are several assignments of error, but in view of the conclusions which we have reached, it will only be necessary to discuss one of them.
There can be no divorce unless there is first shown to be a valid marriage. In the bill of complaint the appellee claimed the existence of a common-law marriage based upon the following allegation:
"The plaintiff further alleges that a common law marriage was consummated between the plaintiff and defendant herein beginning February 22, 1950, by living and cohabiting with the defendant in the town of Edgewater, Volusia County, Florida, both of said parties representing and holding themselves out to be husband and wife; that from the time of their said marriage the plaintiff and defendant lived and cohabited together as man and wife until on or about the 7th day of April, A.D. 1951."
In response to the above allegation the appellant filed his answer which stated:
"Defendant admits the allegations of the facts set forth in Paragraph 2 of the Bill of Complaint but alleges that it was not his intention at any time to contract a marriage with the plaintiff and did not know and was never advised that a common law marriage was created because of the relationship existing between the plaintiff and defendant, and at no time did the defendant state to the plaintiff or advise the plaintiff that he was making her his wife."
It will be noted that the appellee did not allege in her bill of complaint that the parties agreed at any time to become husband and wife. The most that can be said of the allegation and the bill of complaint is that they began "living and cohabiting" and "representing and holding themselves out to be husband and wife", and that they "lived and cohabited together as man and wife".
The appellant specifically denied that it was his intention at any time to contract a marriage and he did not know and was never advised that a common-law marriage was created because of the relationship which existed between them, and specifically alleged "at no time did the defendant state to the plaintiff or advise the plaintiff that he was making her his wife."
The appellee testified to the conclusion that the appellant was her husband and they were married about February 22, 1950, and then the following testimony was given:
"Q. How long did you live with him, Mrs. Carretta? A. For more than a year  until April, 1951.
"Q. During the time that you lived and cohabited with Mr. Carretta, did you hold him out as your husband, and did he likewise hold you out as his wife? A. Yes.
"Q. Did you sign any instruments and papers together as husband and wife during that time? A. Yes."
There was one corroborating witness by the name of Helen Wessler who testified as follows:
"Q. Do you know Lazzaro Rene Carretta? A. Yes.
"Q. What relation is he to Hilda Kroll Carretta? A. He is her husband."
The above is all of the testimony relied upon to establish a common-law marriage.
There are certain elementary principles well established in this State with reference to common-law marriages. In this case the burden was upon the appellee to establish a prima facie common-law marriage, and had she done this, the burden would have shifted to the appellant to prove the illegality of such common-law marriage. Le Blanc v. Yawn, 99 Fla. 328, 126 So. 789; Lambrose v. Topham, Fla., 55 So.2d 557. In the case of Lambrose v. Topham, supra, *441 there was direct and positive testimony that the parties mutually agreed to presently become husband and wife. In this case there is neither allegation nor proof that the parties agreed to presently become husband and wife. The appellee under a leading question, to wit: "Did you sign any instruments and papers together as husband and wife during that time?" answered, "Yes". Under another leading question, "Did you hold him out as your husband, and did he likewise hold you out as his wife?" she answered, "Yes". The above mentioned paper was not produced and there was no evidence as to the kind of paper she signed.
In the case of Marsicano v. Marsicano, 79 Fla. 278, 84 So. 156, this Court held that to constitute a valid marriage, per verba de praesenti, there must be an agreement to become husband and wife immediately from the time when the mutual consent is given.
In the case of In re Price's Estate, 129 Fla. 467, 176 So. 492, 493, we held that "neither cohabitation and repute nor circumstances, whose sole function is to show mutual consent of the parties, establishes a common-law marriage of itself. There must be words of present assent per verba de praesenti."
The best evidence to establish common-law marriage would be the testimony of the contracting parties, or others who may have been present when the agreement was entered into. In Le Blanc v. Yawn, supra, we held that proof of general repute and cohabitation as man and wife will support a presumption of marriage when the agreement is denied and cannot be proven by the best evidence. In this case the appellee was present before the Examiner and testified. If there was any agreement to presently become husband and wife, she could have testified as to that agreement. Her testimony would have been the best evidence. She gave no such testimony.
The proof in this case falls far short of showing a prima facie common-law marriage as required in this State.
Reversed with directions to set aside the final decree and dismiss the bill of complaint.
SEBRING, C.J., and CHAPMAN and THOMAS, JJ., concur.