309 So.2d 625 (1975)
Doyle Edgar CARTER, Individually and As Co-Executor of the Estate of Thomas E. Carter, and Southeast First National Bank of Miami, As Co-Executor of the Estate of Thomas E. Carter, Appellants,
v.
Sonja CARTER, Appellee.
No. 74-767.
District Court of Appeal of Florida, Third District.
March 18, 1975.
*626 Steel, Hector & Davis and Joseph P. Klock, Jr., Miami, for appellants.
Robert M. Brake, Coral Gables, for appellee.
Before HENDRY, HAVERFIELD and NATHAN, JJ.
PER CURIAM.
This is an appeal by the defendants in the trial court from a final judgment in favor of the plaintiff entered by the court after trial without jury.
Sonja Carter, appellee herein, filed a complaint for declaratory decree alleging that she was the widow of Thomas E. Carter, deceased, seeking a declaration of her homestead interests in his property upon his death. The appellants, Southeast First National Bank of Miami and Doyle Edgar Carter, as co-executors of the estate of Thomas E. Carter, denied that the appellee was the widow of their testator. The matter was tried by the court without jury, and the court entered its final judgment stating, inter alia, that Sonja Carter, the appellee, and Thomas E. Carter had entered into a common law marriage which continued until his death, thus making the appellee his widow, entitled to all of the rights and privileges of such status. In its final judgment the court made findings of fact and adjudicated as follows:
"1. SONJA CARTER and THOMAS E. CARTER entered into a ceremonial marriage in Dade County, Florida on January 11, 1963, and lived together as husband and wife at 704 Zamora Avenue, Coral Gables, Florida until they separated and a divorce decree was entered by the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, Case No. 64C-1792 on July 6, 1964.

*627 2. SONJA CARTER returned to Germany to live with her mother. During December, 1964, THOMAS E. CARTER went to Germany to see SONJA CARTER. They traveled together in Germany and Switzerland and each returned separately to the United States and began living together at 704 Zamora Avenue, Coral Gables, Florida.
3. Florida Statutes, Section 741.211 did not invalidate common law marriages entered into prior to January 1, 1968. However, since THOMAS E. CARTER is dead, and SONJA CARTER is prohibited from testifying about transaction with him by Florida Statutes, Section 90.05 (`The Dead Man's Statute'), the Court was required to use circumstantial evidence to determine the agreement between the parties. LeBlanc v. Yahn [Yawn] 99 Fla. 328, 126 So. 789; Edge v. Rynerson, [Rynearson] 107 Fla. 461, 145 So. 180; McBride v. McBride, [Fla. App.] 137 130 So.2d 302; [130] In re Estate of Alcala, [Fla.App.] 188 So.2d 902 [903]. The evidence showed that THOMAS E. CARTER told the mother of SONJA CARTER in Germany in 1964 that he and SONJA CARTER were renewing their marriage relationship. Beginning in January, 1965 SONJA CARTER and THOMAS E. CARTER lived in the house at 704 Zamora Avenue, Coral Gables. Although the relationship was stormy and not without interruption, and although they did not socialize with their neighbors, the neighbors were aware that they were living together. They attended, as husband and wife, many social events given by the Lions Club of Coral Cables, or by members of the Lions Club; and THOMAS E. CARTER continued to list SONJA CARTER as his wife in the Lions Club Roster and introduced her to visitors to the home and to the Lions Club and to new Lions as his wife. They traveled together to Europe in 1965 and in 1967 on tickets purchased by THOMAS E. CARTER in the names of `Mr. and Mrs. THOMAS E. CARTER'; and THOMAS E. CARTER paid for dental work for SONJA CARTER in 1965 and discussed the work to be done and the arrangements for payment therefore with the dentist. While this evidence may have lacked positive statements as to words of agreement exchanged between the parties, it revealed that they reconciled and resumed cohabitation and were publicly recognized as husband and wife prior to the effective date of Florida Statutes, Section 741.211 (In re Beacher's Estate [Fla.App.] 177 So.2d at 838; Navarro Inc. v. Baker [Fla.] 54 So.2d 59).
4. Aginst (sic) this strong prima facie proof of a common law marriage the evidence offered by the Executors of the Estate was insufficient to rebut the strong presumption of validity of this marriage (McBride v. McBride, [Fla. App.] [130] 137 So.2d 302). Although SONJA CARTER filed a separate income tax return beginning with the year 1966 in which the marital status box marked `single' was checked, there was no showing that this use was accompanied by any express denial of the common law marriage. Nor did the existence of the 1964 divorce decree operate to prevent, or even hinder, a common law marriage. As pointed out by the Third District Court of Appeal in the case of Beacher's Estate, 177 So.2d 838 at 843, after the divorce, each of the parties became free to remarry and the policy of the law is to `lend assistance and protection to such married couples in extending or renewing a lawful union.' Similarly, a Property Settlement Agreement entered into before the 1964 divorce was rendered void by the remarriage. Weeks v. Weeks, [143 Fla. 686] 197 So. 393, Hullet v. Hullet, 3 Pac.2d 470, 133 Kan. 738. It is, therefore,
ORDERED AND ADJUDGED AS FOLLOWS:
1. (a) The court hereby finds and adjudicates the following facts, immunities, *628 powers, privileges, rights, status, and other legal or equitable relations, to wit:
(i) SONJA CARTER and THOMAS E. CARTER entered into a common law remarriage after their divorce and sometime during December, 1964 or January, 1965.
(ii) Said marriage relationship continued until terminated by the death of THOMAS E. CARTER.
(iii) SONJA CARTER is the widow of THOMAS E. CARTER and entitled to all of the rights and privileges of such status.
(iv) Under Article 10, Section 4(c) of the Florida Constitution, and Florida Statutes 731.05(1) and 731.27, SONJA CARTER is entitled to a life estate in the homestead of decedent at 704 Zamora, Coral Gables, Florida.
2. The court retains jurisdiction of this action for the purpose of taxing costs upon proper motion therefore and for the enforcement of this Final Judgment."
On appeal, the appellants argue that common law marriage is void and ineffective in the absence of an agreement per verba de praesenti, and that the evidence presented as to cohabitation and repute was unclear and conflicting, and, therefore, did not support the contention of a common law marriage.
In making our determination, we apply the following rule of law to the instant case:
"A common law marriage or marriage per verba de praesenti, as distinguished from a ceremonial marriage, may be proven in various ways. The best evidence of such a marriage would of course be the testimony of the contracting parties or those present when they mutually agreed to take each other as man and wife, but it may be established by what is termed habit or repute. In other words, proof of general repute and cohabitation as man and wife will support a presumption of marriage when the agreement is denied and cannot be proven by the best evidence." LeBlanc v. Yawn, 1930, 99 Fla. 328, 126 So. 789, 790.
Once a prima facie case has been proved and the presumption raised under this rule, then the burden of proving the illegality of a marriage shifts to those who challenge it. In re Estate of Beacher, Fla.App. 1965, 177 So.2d 838, 840, and cases cited therein. In addition, Beacher establishes another rule of law applicable to the instant case, to-wit:
"... if they remarry each other it can be by official ceremony, or a common law marriage. Rather than reject the efforts of such divorced parties to remarry (by the lawful means of common law marriage) the policy of the law and of the courts is to lend assistance and protection to such married couples in extending or renewing a lawful union... ."
The court continued, quoting Justice Bok on remarriage following divorce, stating,
"`In such case we think that the law's role of mere toleration of the common law relationship should be reversed and the status of remarriage favored, even if acquired with common law informality.'" In re Beacher's Estate, supra, page 843.
In the furtherance of the public policy favoring a common law marriage when parties are married, become divorced and then resume cohabitation shortly thereafter, combined with other supportive evidence such as joint payment of bills and holding themselves out to the world as man and wife, we find the trial court's ruling to have been eminently correct, and we, therefore, affirm the final judgment herein appealed.
Affirmed.