343 So.2d 896 (1977)
Ralph DUEY, Appellant,
v.
Daisy M. DUEY, Appellee.
No. 76-82.
District Court of Appeal of Florida, Third District.
March 1, 1977.
Rehearing Denied April 1, 1977.
Hal P. Dekle, Tallahassee, and Robert E. Craig, Miami, for appellant.
Jack P. Attias, Miami, for appellee.
Before HENDRY, C.J., PEARSON, J., and CHARLES CARROLL (Ret.), Associate Judge.
HENDRY, Chief Judge.
Appellant, Ralph Duey, was the respondent below and appellee, Daisy M. Duey, was the petitioner. This appeal is from a final judgment entered in the lower court which (1) held that a common law marriage existed between the parties on or about December 31, 1964,[1] (2) dissolved said common law marriage, (3) inter alia awarded appellee lump sum alimony in the amount of one-half the value of the "marital abode", periodic permanent alimony, reasonable attorneys' fees and one-half of appellee's costs and (4) awarded appellant custody of the parties' minor child (age 14) and use of the "marital abode" until said child reached majority, married or becomes self-supporting.
The facts of the case are as follows: Appellant and appellee were ceremonially married in Ohio on July 2, 1960. The parties thereafter moved to Florida where they lived as husband and wife until October 29, 1964, when appellee received a decree of divorce in Dade County. The decree awarded appellee custody of the only child born of the marriage, a daughter.
After the divorce, appellee and child moved back to Ohio, residing in the home of appellee's parents. The stay was, however, shortlived and within several weeks, both were back in Dade County, taking up residence in a Hialeah apartment.
In the meantime, appellant's longing for the companionship of his daughter and former wife reached a zenith when, during one of his weekly visits to appellee's apartment for the purpose of paying child support, *897 appellant invited both to move back into their former home. (Said home being awarded to appellant via quit claim deed from appellee pursuant to their divorce decree).
Appellee and daughter accepted the invitation and returned to the home of appellant. Appellant and appellee thereafter lived together until August 14, 1975, when appellee moved out and instituted the proceedings currently under review. Some three months later, on November 12, 1975, after a lengthy hearing, the learned chancellor entered the aforedescribed final judgment, dissolving the alleged common law marriage and making the various awards. This appeal follows.
Appellant raises many points on appeal, the first and foremost being the alleged error of the chancellor in holding, by way of lengthy findings of fact and conclusions of law, that subsequent to the original divorce decree, the parties entered into a common law marriage. Appellant contends that absent words of present assent, per verba de praesenti, no common law marriage could have legally been found to exist.
For the reasons that follow, we find appellant's premier contention to be of merit, obviating the necessity of discussing his remaining points, which have been omitted for sake of conciseness.
Cases are legion which hold that in order for a valid common law marriage to exist, the following prerequisites must exist: general repute, cohabitation, capacity and present assent to become man and wife, i.e., words per verba de praesenti. Chaves v. Chaves, 79 Fla. 602, 84 So. 672 (1920); Marden v. Marden, 276 So.2d 493 (Fla. 4th DCA 1973); Phillips v. Phillips, 215 So.2d 83 (Fla. 3d DCA 1968).
While it is uncontradicted that the parties cohabitated together and held themselves out to the world as being husband and wife  bought property in their joint names, filed joint income tax returns, etc., there is noticeably lacking in the record any testimony concerning words evidencing the present intent to be married. Appellee concedes this, but argues that no words per verba de praesenti need be expressed as a prerequisite to a valid common law marriage where, as here, the facts reflect that the parties did not originally separate until one day after the original dissolution of marriage was granted and resumed courtship and cohabitation some three (3) weeks thereafter. Appellee contends that under the above circumstances, the actions of the parties in reuniting after such a short separation were a sufficient substitute for words per verba de praesenti.
In support thereof, appellee refers to two cases, both relied upon by the chancellor in making his ruling  Navarro, Inc. v. Baker, 54 So.2d 59 (Fla. 1951) and In re Beacher's Estate, 177 So.2d 838 (Fla. 3d DCA 1965). The following language from the former case is especially emphasized by appellee.
"True, no positive statements were exchanged when they agreed to resume relation of husband and wife, but the circumstances surrounding [this] meeting were more eloquent and forceful than formal language." Navarro, Inc., supra, at 60.
While both of the above cases found the existence of a common law marriage absent the aforementioned "magic words", the facts of those cases appear to be peculiarly distinguishable from the case sub judice in that the parties there resumed cohabitation at or about the time of the entry of their respective divorce decrees and were, in both cases, in doubt as to whether the divorce was effective as terminating their respective marriages.
Here, there is no doubt that the parties knew that they had been divorced. In addition, the "more eloquent and forceful circumstances" surrounding the reunion in Navarro, Inc., supra, which enabled that court to dispense with words per verba de praesenti, are noticeably absent sub judice. For example:
"Q (Mr. Craig): Did you ever have any conversation with him about getting married again? *898 "A (Appellee) Yes.
"Q What was the nature of those conversations?
"A Well, when I first went back he said that we would remarry." [Emphasis added.]
* * * * * *
"Q Has Ralph himself ever said to you that `We are not married.'?
"A Yes.
"Q On many, many occasions?
"A Yes."
* * * * * *
"Q You were aware of the divorce?
"A Yes.
"Q And you knew that it was a divorce?
"A Yes.
"Q And that you were divorced and you weren't married?
"A Yes."
* * * * * *
"Q (Mr. Attias) Did you ever introduce Mrs. Duey as your wife to anybody?"
* * * * * *
"A (Appellant) Lots of people."
* * * * * *
"Q Why did you do that?
"A To save embarrassment for me and my daughter and her that we were just shacking up." [Emphasis added.]
* * * * * *
"Q After the divorce, you really wanted to start with her anew. You asked her to come back to you. Is that correct?
"A For the benefit of my daughter.
"Q You didn't want a divorce?
"A To start with, but I would never remarry again for nobody. [Emphasis added.]
"Q (Mr. Craig): Mr. Duey, did you feel that you were taking her back as a wife in December of 1964?
"A Not as a wife but as a still very good friend."
The above excerpts, taken from the depositions of appellee and appellant, respectively characteristically represents the parties' state of mind at the time of their reunion. At best, only a promise to marry in the future could be properly interpreted, and Florida has never recognized such a marriage per verba de futuro cum copula. Le Blanc v. Yawn, 99 Fla. 328, 126 So. 789 (1930).
In light of the above, the requirement of words per verba de praesenti, as evidencing the present intent of the parties to be husband and wife, was a necessary prerequisite to a finding of a common law marriage between the parties. Williams v. Dade County, 237 So.2d 776 (Fla. 3d DCA 1970). There admittedly being no such words spoken, it was error to view the relationship of the parties as one of "marriage." As counsel for appellant so perceptively summarizes, "The law will not supply what love could not."
We have considered the record, all points in the briefs and arguments of counsel in the light of the controlling principles of law, and have concluded that reversible error has been demonstrated. Therefore, for the reasons stated and upon the authorities cited and discussed, the judgment appealed is reversed.
Reversed.
NOTES
[1] Section 741.211, Florida Statutes (1975), voided common law marriages entered into after January 1, 1968.