543 So.2d 1284 (1989)
Grace BOWEN, Appellant,
v.
James H. BOWEN, Appellee.
No. 88-01237.
District Court of Appeal of Florida, Second District.
May 12, 1989.

ON MOTION FOR REHEARING OR CLARIFICATION
THREADGILL, Judge.
Appellee's motion for rehearing is denied. His motion for clarification is granted, and we withdraw our opinion of March 10, 1989, and substitute the following opinion:
The wife appeals from an amended final judgment of dissolution of marriage, contending that the trial court's award of permanent alimony was inadequate, that the court erred in failing to include an orange grove, or its appreciated value, as a marital asset, and that the overall equitable distribution plan was unfair. We agree and reverse.
The parties were married April 20, 1973. The final judgment of dissolution was entered November 12, 1987, and amended April 1, 1988. The wife had two children by a previous marriage who were subsequently *1285 adopted by the husband. One child was born during the marriage. Two of the children are still minors and reside with the wife.
The wife does not have a high school education and did not work outside the home during the marriage. The husband has been employed with Bowen Brothers, Inc. for his entire adult life and received $100 per week from the company at the time of final hearing. Prior to the parties' separation, the husband earned $30,000 per year with Bowen Brothers. In addition, he received income from fruit produced on the disputed grove property. The proceeds from the grove have averaged $144,082 per year over the past five years, and the grove currently is valued at $1,200,000. At the time of the dissolution other marital property included land in Costa Rica valued at $19,000 to $29,000, residential property on Lake Ruby which was sold for $68,000, and the marital residence now occupied by the wife for which the parties paid $330,000. The marital home carries two mortgages with respective balances of $89,150 and $56,765. At the time of the final hearing the wife was employed and earning approximately $10,000 per year. From the time of the separation in 1985 until final judgment, the husband paid the wife $1,800 per month, and covered all the household expenses including mortgage payments, utilities, and insurance.
In the final judgment of dissolution, the trial court awarded the wife, among other things, $500 per week in child support, permanent alimony of $1,000 per month, and all interest in the Lake Ruby property. The wife was also awarded possession and one-half interest in the marital home, but was required, pursuant to the amended final judgment, to pay one-half of the mortgage, taxes, insurance, major repairs and maintenance. The court found that the grove property was a non-marital asset, not subject to equitable distribution and any interest the wife might claim in the grove was awarded to the husband. The husband was also awarded all interest in the Costa Rica property.
We find the trial court erred in awarding the wife only $12,000 per year as permanent alimony while making her responsible for annual mortgage payments of $25,000 and other expenses of the marital home previously paid by the husband. After the separation and until the entry of the amended final judgment, the husband paid the wife $1,800 per month and assumed the mortgage payments. In 1986, he paid $34,000 in alimony and child support, and $56,391 in mortgage payments. Clearly, on these facts alone, the award of permanent alimony, even with the wife's annual salary of $10,000, is insufficient for her to maintain the standard of living she enjoyed during the marriage. See Johnson v. Johnson, 517 So.2d 790 (Fla. 2d DCA 1988).
We also find the wife had an interest in the grove property. The husband and his brother purchased an option to buy the property in March of 1973. The parties were married in April of 1973. The husband and his brother exercised their option and purchased the grove in September of 1973. The husband's brother subsequently transferred his interest in the property to the husband. The grove was purchased for approximately $500,000 and now has a value of $1,200,000. The evidence showed that substantial marital funds were invested in the maintenance and enhancement of the grove during the marriage. Testimony also revealed that the husband invested labor as well as money in the grove, and that the proceeds were credited to his account with Bowen Brothers. Income derived from the grove was used to support the parties during the marriage.
Parties to a dissolution proceeding are entitled to equitable distribution of marital assets. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). If the property was lawfully acquired by either or both parties after the marriage and enhanced during the marriage by marital labor or funds, that property is a marital asset. Miceli v. Miceli, 533 So.2d 1171 (Fla. 2d DCA 1988). In the amended final judgment the trial court states that it finds the grove property is not a marital asset "because the funds used to purchase the property *1286 came from a source wholly independent of the marriage and the purchase preceded the marriage." This finding is not supported by the record. It is clear from the record that the property was purchased after the marriage. The only funds expended on the acquisition, which could possibly be independent of the marriage, were those used to buy the option and, possibly, the down payment. All other sums, including mortgage payments, care and maintenance, were paid after the marriage. The testimony further reveals that once the husband bought the grove, it became his primary occupation and source of income.
That the husband used profits derived from the sale of premarital assets to make the down payment on the grove is not determinative of its status as marital property. For example, in Buttner v. Buttner, 484 So.2d 1265 (Fla. 4th DCA 1986), an apartment complex purchased by the husband with proceeds from the sale of a home he owned before the marriage was placed in his name alone. At dissolution, the property had appreciated considerably and the mortgage had been reduced. The court found the property to be a marital asset subject to equitable distribution. The crucial inquiry, said the court, is whether the property was legally and beneficially acquired by either or both of the parties during the marriage. 484 So.2d at 1266-67.
Likewise, in Crapps v. Crapps, 501 So.2d 661 (Fla. 1st DCA 1987), rev. den., 511 So.2d 297 (Fla. 1987), the court found that timber acreage owned by the husband prior to his marriage or acquired by gift during the marriage was subject to equitable distribution as he had devoted considerable time during the marriage to cultivating the property.
The husband argues that this court's decision in Macaluso v. Macaluso, 523 So.2d 615 (Fla. 2d DCA 1988), supports the trial court's finding that the grove was a non-marital asset. However, Macaluso is distinguishable. In Macaluso, this court found that assets from the husband's family business were non-marital property. There, the family business was established before the husband was born, and the shares ultimately given to him had previously been held in trust for him. The husband was employed outside the business and none of his labor during the marriage or marital funds contributed to the appreciation of his share of the family corporation. Here, though the husband attempts to minimize his contributions during the marriage to the appreciation of the grove property, it is clear that his labor and funds were instrumental in converting this grove into a lucrative income-producing property. Miceli, 533 So.2d 1171. The trial court therefore erred in finding that the grove was a non-marital asset.
In summary, we find that the trial court's alimony award was inadequate and the grove property should have been included in the equitable distribution. Accordingly, we reverse and remand for the trial court to consider further evidence as may be necessary to reach an equitable distribution between the parties with consideration being given to each party's claim to any special equity.
Reversed and remanded.
LEHAN, A.C.J., and ALTENBERND, J., concur.