571 So.2d 499 (1990)
Margie Ann THOMAS, Appellant/Respondent, Cross-Appellee,
v.
Randell D. THOMAS, Appellee/Petitioner, Cross-Appellant.
No. 89-1926.
District Court of Appeal of Florida, First District.
October 16, 1990.
Rehearing Denied January 18, 1991.
*501 Michael A. Morris and John L. Myrick of Myrick & Davis, P.A., Pensacola, for appellant.
Michael G. Allen of Eddins, Allen, Cooper & Owens, Pensacola, for appellee.
JOANOS, Judge.
The former wife in this dissolution of marriage proceeding appeals the financial and property distribution aspects of the final judgment. The former husband cross-appeals the award of attorney's fees to the wife's counsel. The specific issues presented for review are: (1) the failure to award adequate lump sum alimony or permanent periodic alimony to the wife, (2) the determination that Randell Thomas Glass Company stock constituted the husband's separate asset not subject to equitable distribution, (3) the failure to set aside the property settlement agreement entered into in connection with the dissolution of the parties' first marriage to each other, and (4) an award of attorney's fees unsupported by contemporaneous time records. We affirm the issue raised on cross-appeal, and reverse and remand the issues raised on the main appeal for further proceedings.
The parties were first married in 1956. The wife was sixteen and the husband was in the Air Force. The wife completed high school after the marriage, and has had no further education or technical or vocational training. During the first years of the marriage, the husband left the Air Force briefly, then signed on for four more years. Between 1955 and 1974, the parties' three sons were born, and the family moved frequently. The wife did not work outside the home for the first eighteen years of the marriage.
By 1974, the parties were living in Pensacola. The husband developed lung problems, and a doctor told him he would never be able to work again. The wife then went to work as an office manager for an air conditioning company. In 1978, the husband started his own glass business, operating out of the home. From that point on, the wife worked in the family corporation, which was named Randell Thomas Glass Company, Inc.
In 1984, the parties entered into a buysell agreement with Harmon Glass of Florida, Inc., whereby Harmon Glass bought fifty-five per cent of the stock of Randell Thomas Glass Company, Inc., paying a purchase price of $84,644. At the same time, the husband entered into an employment agreement with Harmon Glass. Afterwards, the husband bought the wife's one-half interest in the shares of Randell Thomas stock held by the parties.
On May 31, 1985, the parties' first marriage was dissolved. The final judgment incorporated a property settlement agreement entered into by the parties. Neither party was represented by counsel during the first dissolution proceeding. The parties gave conflicting accounts concerning how the property was divided. The husband's testimony establishes that he discussed the matter with an attorney and with his accountant, before he wrote out a division of the property. His testimony indicates that, because the wife insisted she needed some income, he gave her a note receivable in exchange for the furniture in the marital home. The husband also testified that he received the total cash payment from Harmon Glass prior to the 1985 divorce, and that he bought a lot on North Palafox Highway with $22,000 of the Harmon Glass money. He said the remainder of the cash was in the bank when the parties divided their property, and that *502 they agreed he would keep the cash, and that the cash was taken into consideration in working out the division of property. The 1985 property settlement agreement contains no reference to these funds. The husband's testimony reflects that at the time of the 1985 divorce, he used $5,000 of the Harmon Glass stock purchase funds to pay to the wife as a down payment on her one-half interest in the forty-five percent ownership the parties held in Randell Thomas Glass Company. He executed a promissory note to the wife, providing for annual payments of $10,000, said payments due each March. The husband used the remainder of the stock purchase proceeds, together with borrowed funds, to build the new office and shop building located on North Palafox Highway, which facility is leased to Harmon Glass.
The wife testified that up until 1984, the parties were totally involved in the business together, and discussed everything. In 1984, the husband began shutting the wife out of involvement in the business. The wife's testimony reflects that in March 1985, the husband said they should divorce. After the husband spoke to an attorney, the wife obtained some legal forms which she typed at the husband's direction. The wife said she was not forced to sign the settlement agreement, explaining that the husband told her she could have the house and car, and that the value of those assets was equal to the value of the parties' other assets, i.e., real property and stock. Although the wife received the marital home in connection with the former property settlement agreement, the husband continued to reside there, rent-free.
The wife also testified that during the preparation of the papers for the 1985 dissolution, she inquired about the money paid by Harmon Glass for the stock purchase, and the husband told her the cash was all gone. A year or more after the divorce, the wife found a bank statement which indicated a large portion of the money was in the bank at the time of the prior dissolution. The wife also stated that prior to the first dissolution, at the husband's insistence, she went to see the husband's counselor. The counselor told her the husband was a walking time bomb, and she had better get what she could and leave before he exploded.
The parties reconciled shortly after the May 31, 1985, dissolution of their first marriage, and lived together for a period of time before remarrying on May 8, 1986. On November 7, 1987, during the parties' second marriage, Randell Thomas Glass bought S & S Glass, a Fort Walton Beach business. The husband paid forty-five percent of the purchase price for a forty-five percent interest in S & S Glass. To make the investment, the husband obtained a bank loan in the amount of $110,000, using the North Palafox Highway property as security for the loan. The testimony of Mr. Inman, vice-president of Harmon Glass, established that during the second marriage, the husband received a base salary of $36,500; for the first eleven months of 1988, he was reimbursed $6,600 for travel and entertainment expense; his 1988 bonus was projected as $7,000 to $8,000; and his 1988 distribution of profit was projected as $30,000 to $40,000. In Mr. Inman's opinion, the husband's employment agreement with Harmon Glass incorporates S & S Glass.
When the parties divorced in 1985, they closed their joint checking account, and the husband opened a personal checking account. When the parties remarried in 1986, the wife's name was added to the husband's personal checking account, but the parties' money market accounts remained separate. The husband signed a listing agreement for the marital home owned solely by the wife, and acknowledged that a joint financial statement dated June 30, 1987, listed husband and wife's assets as the building on North Palafox Highway, the residence, and two vacant lots.
In the summer of 1988, the husband told the wife he was going to file for divorce. The husband also acknowledged that after consulting his attorney about a divorce, on his attorney's advice, he tendered past-due payments owed to the wife on the promissory note executed in connection with the first dissolution proceeding. These payments *503 were refused. The husband filed a petition for dissolution of marriage. The wife filed an answer and counterpetition, seeking alimony, equitable division of property, and abrogation of the final judgment entered May 31, 1985.
In the final judgment entered June 29, 1989, the trial court ruled that the May 31, 1985, final judgment of dissolution of marriage was valid and binding, that the property settlement agreement entered into at that time was valid, and that the property awarded to each party at the time of the first dissolution of marriage was separate property for distribution purposes in the instant divorce. The court found no authority to set aside the agreement, and further found no authority to suggest that reconciliation of parties after a valid final judgment of dissolution of marriage abrogates the property settlement aspects of that decree. Accordingly, the counterpetition to set aside the final judgment or property settlement agreement was denied. The trial court denied the wife's claim for permanent alimony, expressly finding that this had been a three-year marriage. In a separate order entered September 21, 1989, the trial court directed the husband to pay the wife's counsel an attorney's fee of $10,000, plus costs of $906.50.
The first issue concerns the trial court's refusal to award any form of alimony to the wife. It is well settled that the primary criteria to consider in an alimony determination are the needs of one spouse and the ability of the other spouse to meet those needs, taking into consideration the parties' shared standard of living during the marriage. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Sisson v. Sisson, 336 So.2d 1129 (Fla. 1976); Askegard v. Askegard, 524 So.2d 736, 737 (Fla. 1st DCA), review denied, 536 So.2d 243 (Fla. 1988); Lutgert v. Lutgert, 362 So.2d 58, 60 (Fla. 2d DCA 1978), cert. denied, 367 So.2d 1125 (Fla. 1979). In other words, "the purpose of permanent periodic alimony is to provide the needs and necessities of life to a former spouse as they were established during the marriage of the parties." Canakaris, 382 So.2d at 1201; Allison v. Allison, 491 So.2d 1201, 1202 (Fla. 1st DCA 1986). Furthermore,
[a] person is not self-supporting because he or she has a job and income. The standard of living must be compared with the standard established during the course of the marriage. A divorced wife is entitled to live in a manner reasonably commensurate with the standard established by the husband during the course of a long-term marriage. [citation omitted]. A court must base an award of alimony to a wife upon the ability of her husband to pay that award in light of the standard of living she enjoyed during the marriage.
Askegard, 524 So.2d at 737, quoting O'Neal v. O'Neal, 410 So.2d 1369, 1371 (Fla. 5th DCA 1982).
In the instant case, the trial court's decision to deny the wife's request for alimony was expressly predicated on a finding that the case involved a three-year marriage, and the view that the wife's independent earning ability was sufficient to provide her with a life style comparable to that achieved during the second marriage. This finding is without support in the record. In the unique circumstances of this case, it is unrealistic to view the wife's request for alimony in the context of a three-year marriage. The parties to this proceeding spent thirty-three years together, interrupted by a four to six month hiatus. The record establishes unequivocally that the husband's present prosperity is attributable in large measure to the wife's efforts in the family business the parties built together. Therefore, we conclude the trial court abused its discretion in making an alimony determination without considering the prior thirty-year marriage of the parties.
The second issue concerns the equitable distribution scheme fashioned by the trial court. Although a property distribution need not be equal, the parties are entitled to an equitable distribution of assets. Allison, 491 So.2d at 1203, citing Tronconi v. Tronconi, 466 So.2d 203 (Fla. 1985). The initial inquiry in determining whether an asset is a marital asset for equitable distribution purposes "should be *504 whether the property was legally and beneficially acquired by both or either of the parties in the course of the marriage." Sanders v. Sanders, 547 So.2d 1014, 1015 (Fla. 1st DCA 1989); Buttner v. Buttner, 484 So.2d 1265 (Fla. 4th DCA), review denied, 494 So.2d 1149 (Fla. 1986). If the property was lawfully acquired by either or both parties after the marriage, and enhanced during the marriage by marital labor or funds, the property is a marital asset. Bowen v. Bowen, 543 So.2d 1284, 1285 (Fla. 2d DCA 1989). See also Carr v. Carr, 522 So.2d 880 (Fla. 1st DCA 1988); Crapps v. Crapps, 501 So.2d 661, 663 (Fla. 1st DCA), review denied, 511 So.2d 297 (Fla. 1987). The recognized exclusions include property obtained by gift, devise, or intestate succession. Buttner, 484 So.2d 1267. An equitable distribution determination should recognize the enhanced value of assets owned solely by one spouse prior to the marriage, insofar as the increase in value can be attributed to marital labor or funds, inflation, or market conditions. In other words, equitable distribution is not limited to a determination of the value of just those assets acquired during the marriage. Turner v. Turner, 529 So.2d 1138, 1141 (Fla. 1st DCA 1988); Carr; Crapps; Sanders.
The equitable distribution issue in this case concerns the trial court's determination that the Randell Thomas Glass stock is the husband's separate asset. Prior to 1984, the husband and wife owned one hundred percent, i.e., one hundred shares, of Randell Thomas Glass Company, Inc. In 1984, the parties sold fifty-five percent of their interest to Harmon Glass for $84,664. The husband's testimony reflects that during the pendency of the first divorce, he used $5,000 of the $84,664 received from Harmon Glass as a down payment to the wife for her twenty-two and one-half percent interest in Randell Thomas Glass. Thus, the husband actually paid the wife $2,500, because she had a half interest in the fund from which the down payment was made. The remainder of the $84,664 received from Harmon Glass accrued to the husband.
Under recognized equitable distribution principles, the S & S acquisition is a marital asset subject to equitable distribution. This entity was purchased in 1987, during the second marriage, and its value increased considerably before the marriage ended. The husband's argument that S & S was acquired with funds unconnected with the marriage is without merit. The husband obtained a loan of $110,000 secured by the North Palafox Highway property, to pay his share of the purchase price of S & S. This property was acquired in large part through use of the proceeds from sale of the fifty-five percent interest in Randell Thomas Glass to Harmon Glass. The wife held a half interest in the fifty-five percent of the company that was sold, but actually received only a small portion of the $84,664 purchase price. Furthermore, the property, which is the Randell Thomas Glass site, has been used by the husband as his primary occupation and major source of income during the marriage. The husband used the rent received from Harmon Glass to pay the debt service on the loan obtained to purchase S & S Glass. In addition, the record reflects that marital labor served to enhance the value of both S & S and Randell Thomas Glass.
In light of the foregoing, we conclude that the determination that the Randell Thomas Glass stock is the husband's separate asset must be reversed and remanded, with directions to reexamine the circumstances of the husband's acquisition of the wife's interest in Randell Thomas Glass, and to reconsider the parties' respective interest in the stock. This examination should give special consideration to the acquisition of S & S Glass, as well as the enhanced value of Randell Thomas Glass.
The third issue concerns the 1985 property settlement agreement executed in connection with the dissolution of the parties' first marriage. While postnuptial agreements concerning alimony and marital property are enforceable, there are "two separate grounds by which either spouse may challenge such an agreement and have it vacated or modified." Casto v. Casto, 508 So.2d 330, 333 (Fla. 1987). First, *505 an agreement may be set aside or modified if it is established that it was reached under fraud, deceit, duress, coercion, misrepresentation, or overreaching. Id.; Masilotti v. Masilotti, 158 Fla. 663, 29 So.2d 872 (1947). See also Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962). Second, the spouse challenging the agreement must show that it makes an unfair or unreasonable provision for that spouse, given the circumstances of the parties. Once the unreasonableness of the agreement has been established, "a presumption arises that there was either concealment by the defending spouse or a presumed lack of knowledge by the challenging spouse of the defending spouse's finances at the time the agreement was reached." Casto, 508 So.2d at 333. The burden then shifts to the defending spouse to show (a) a full, frank disclosure regarding the value of all marital property and the income of the parties, or (b) a general knowledge by the challenging spouse of the extent of the marital property sufficient to obtain a value by reasonable means, as well as a general knowledge of the income of the parties. "The test in this regard is the adequacy of the challenging spouse's knowledge at the time of the agreement and whether the challenging spouse is prejudiced by the lack of information." Casto, 508 So.2d at 333; Belcher v. Belcher, 271 So.2d 7 (Fla. 1972); Del Vecchio, 143 So.2d at 20.
In Casto, the supreme court reiterated that the critical test in determining the validity of marital agreements is whether there was fraud or overreaching on one side, or whether the challenging spouse did not have adequate knowledge of the marital property and income of the parties when the agreement was reached. In addition, the court cautioned that courts must realize that parties to a marriage are not dealing at arm's length. Therefore, trial judges must examine the circumstances carefully to determine the validity of such agreements. Casto, 508 So.2d at 334.
In Casto, the court emphasized that lack of legal representation of one of the parties is not sufficient, in and of itself, to vacate or modify the agreement. 508 So.2d at 335. See also Tenneboe v. Tenneboe, 558 So.2d 470 (Fla. 4th DCA 1990). Rather, presence or absence of legal counsel is one factor to consider, together with all other circumstances in the case when claims of fraud, duress or other actionable misconduct are made. See Tenneboe, and cases cited therein.
When the Casto principles are applied to the 1985 property settlement agreement in this case, it appears the wife advanced a tenable claim for relief on grounds of misrepresentation and overreaching, or on grounds of unfair or unreasonable provision for her needs, given the circumstances of the parties. As to the first ground, the wife testified that the husband told her the funds paid by Harmon Glass for a fifty-five percent interest in Randell Thomas Glass were gone. The record reflects, however, that $60,000 of that amount was in the bank, and was used thereafter by the husband to construct a building on the lot he purchased with $22,000 of the same fund. In addition, the husband testified that he prepared a list of the parties' property, which he then gave to the wife to type in the preparation of a form petition for dissolution of marriage and property settlement agreement. Thus, it appears the wife had a general knowledge of the husband's assets and property, but she was not informed as to the specifics.
As to the second ground, the record reflects that under the terms of the 1985 property settlement agreement, the wife received the marital home but not the right to reside therein, an automobile, and a note receivable with balance due of $21,000. The husband received all household furniture, the right to reside in the marital home rent free, a motor home, the North Palafox Highway property (purchased with the Harmon Glass funds), and two other properties. In addition, the record reflects that the husband had an employment agreement with Randell Thomas Glass, with a guaranteed salary, bonus, and profit distribution, together with an interest in the company. Thus, the husband was assured a comfortable flow of income. The record further reflects that the wife's work experience was limited to clerical work, primarily in *506 the family business, and she has no specialized training of any kind. At the time of the dissolution, she was working for Randell Thomas Glass Company without salary, and working as a fill-in employee at other Harmon Glass businesses. Further, there is a suggestion of coercion in testimony that the husband insisted that the wife talk to his counselor, and the counselor's advice to the wife to take what she could get and go, because the husband could explode at any moment.
Although the coercion in this case was not so overt as that detailed in Casto, and the wife in this case had a general knowledge of the husband's assets, the totality of the circumstances suggests overreaching and misrepresentation. On the basis of the wife's testimony that she was not forced to sign the agreement, the trial court found the agreement had been entered into voluntarily, and was therefore valid. Casto suggests that the trial court should have examined the circumstances of the instant agreement with greater care.
This case presents the additional question whether remarriage of the parties serves to abrogate the prior agreement. In Delgado v. Cotta de Lopez, 546 So.2d 1075 (Fla. 3d DCA 1989), as in the instant case, there was a marriage, a divorce, and remarriage. The parties were first married in 1977, and entered into a property settlement agreement in 1983 during the pendency of a divorce action. In the agreement, the parties waived all rights either might have to take under the will of the other. The agreement was incorporated into the final judgment entered on May 30, 1984. In 1985, the parties remarried and remained married until the wife's death in 1987. The probate court ruled that the husband waived all rights under section 732.702, and denied the husband's petition to take an elective share as a pretermitted spouse. Subsequently, the husband's counsel located a written agreement, dated 1984, which revoked the property settlement agreement. The court relied on Weeks v. Weeks, 143 Fla. 686, 691, 197 So. 393, 395 (1940), in which the supreme court stated "[i]t appears to be well settled that reconciliation of husband and wife and resumption of marital relations for any period of time will render a previous contract and settlement of property rights void." See also Mills v. Mills, 460 So.2d 545 (Fla. 1st DCA 1984); Zullo v. Zullo, 317 So.2d 453 (Fla. 3d DCA 1975), writ discharged, 342 So.2d 77 (Fla. 1977). The Delgado court noted "[t]his court has held that Weeks applies when the parties remarry each other, Weston v. Weston, 483 So.2d 822 (Fla. 3d DCA 1986); Carter v. Carter, 309 So.2d 625 (Fla. 3d DCA 1975), and that the Weeks rule is applicable when the property settlement agreement has been incorporated into the final judgment of dissolution." 546 So.2d at 1076. Accordingly, the court held that where the parties have remarried, the remarriage renders the waiver provision of the property settlement agreement unenforceable. Resolution of the issue made it unnecessary for the court to consider the effect of the revocation on the separation agreement. Id.
Under the principle enunciated in Weeks, and the extension of that principle to remarriage of the parties to each other, see, Delgado; Weston, the 1985 property settlement agreement entered into in this case should be considered void by virtue of the parties' remarriage to each other. Therefore, the trial court abused its discretion in failing to set aside the prior property settlement agreement, for purposes of an equitable distribution of the marital assets in this case.
The husband's cross-appeal concerns the amount of the attorney's fee awarded to the wife's counsel. The husband's challenge to the fee award is predicated on the failure of the wife's counsel to keep contemporaneous time records for a portion of the hours claimed, and on the allegation that some of the claimed time was not related to the dissolution proceeding. Neither contention has merit. The time allegedly spent in unrelated matters was related to the property division issues in the case, and the order on attorney's fees expressly addressed the issue of the absence of some contemporaneously kept time records to support the time claimed, *507 and reduced the claimed fee proportionately. The record does not contain a transcript of the hearing on attorney's fees. Since the husband has failed to demonstrate error in the award of attorney's fees, see Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1980), this portion of the final judgment is affirmed.
In summary, we find an abuse of discretion in the trial court's determination that the dissolution of marriage should be considered a three-year marriage for purposes of the division of property and consideration of an award of alimony to the wife. Accordingly, we reverse that portion of the final judgment concerned with the marital and non-marital assets of the parties, and remand with directions to revisit the financial aspect of the final judgment in its entirety. In addition, the trial court should re-evaluate the question of an award of alimony to the wife in light of this opinion. In all other respects, the final judgment of dissolution of marriage is affirmed.
BOOTH and BARFIELD, JJ., concur.